Carlos Wilfredo MELGAR, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–05–01049–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

March 22, 2007.

Discretionary Review Refused
Sept. 12, 2007.

Rosa Eliades, Houston, for Appellant.

Charles A. Rosenthal, Jr., District Attorney-Harris County, and Lori Deangelo Fix, Asst. District Atty., Houston, for State.

Panel consists of Chief Justice RADACK and Justices JENNINGS and BLAND.

## OPINION

SHERRY RADACK, Chief Justice.

A jury convicted appellant, Carlos Wilfredo Melgar, of kidnaping and assessed punishment at nine years' confinement, probated for nine and one-half years, and a $9,000 fine. In three points of error, appellant contends that (1) the trial court erred by excluding the testimony of five character witnesses, who were business associates of appellant, that appellant is an honest, truthful, and non-violent person,

(2) the evidence is factually insufficient, and (3) appellant received ineffective assistance of counsel at trial. We reverse and remand.

## BACKGROUND

The complainant, Hector David Amaya, was in the business of buying cars from insurance companies, repairing them, and then selling them. Appellant purchased two cars from Amaya and Amaya promised to repair them. Appellant wrote a check to pay Amaya, but, when there were problems with the checks' clearing, he wrote Amaya another check. Eventually, both checks cleared. Amaya cashed both checks and kept the money. It is undisputed that Amaya owed appellant $2100 because appellant had paid Amaya twice.

The State's version of the events giving rise to appellant's being charged with kidnaping is as follows: On February 14, 2004, Amaya went out to buy auto parts at salvage yards and returned home around 11:30 a.m. When he got out of his car, appellant drove up behind him and blocked him in the driveway. Three men got out of the car. Appellant said that he had come for his money. One of appellant's companions told Amaya that he was not going anywhere unless he had appellant's money, and, if he did not have the money, they were going to take him to a vacant lot in Conroe and kill him. Amaya testified that he struggled with the men as they forced him into the car. Amaya also testified that one of his employees, Lucio Lopez, saw Amaya struggling with the men. When the men pulled out guns, Lopez ran into the house. Lopez did not testify at trial.

Amaya testified that, as they were headed toward the feeder road of the freeway, they heard a police siren. Instead of getting on the freeway, appellant pulled into a McDonald's restaurant and drove behind the dumpsters. Amaya begged for more time to get the money. Appellant told Amaya that he would give him until 5:00 p.m. on Monday, but, now, instead of $2100 he wanted $4,000. Appellant said that if Amaya did not show up with the money, appellant and his companions would kill Amaya and his family and burn down their house.

After the men left Amaya at McDonald's, he called his daughter from the pay phone and told them where he was. The police were already at Amaya's house because his family had called them after Lopez ran into the house. The police went to the McDonald's and picked up Amaya. Amaya told the police that he had been kidnapped, but he did not tell them that he knew who did it. After talking with his family, Amaya decided to go to the police station and give a statement implicating appellant.

The defense presented the following version of the events of February 14, 2004. Appellant had gone to eat breakfast with three of his employees, Angela Palma, Manuel Martinez, and Omar Velasquez. Because they were near Amaya's house, appellant decided to drive by to try to collect the money that Amaya owed him. When they first arrived, Amaya was not there, so appellant parked the car and waited. One of Amaya's neighbors asked appellant to move his car, and appellant did so. When he saw Amaya arrive, appellant moved the car back in the drive of Amaya's house, got out of the car, and, together with Martinez, approached appellant to speak with him. Amaya stated that he did not have the money with him, but that they could drive to the bank together to get it. Amaya got in the car with appellant and the three other men, and they headed toward the bank. On the way, Amaya noted that because it was a holiday, the bank might be closed. Amaya

volunteered to be dropped off somewhere along the feeder road so that appellant would not have to take him home. Appellant pulled into a McDonald's parking lot and dropped Amaya off. Appellant testified that no one had a weapon, assaulted Amaya, or threatened him in any way.

Velasquez and Martinez both testified and corroborated appellant's version of the events. Julio Salas, the neighbor who had asked appellant to move his car, also testified that he never saw anyone force Amaya into appellant's car.

## EXCLUSION OF CHARACTER WITNESS EVIDENCE

In point of error one, appellant contends the trial court erred by not permitting him to present the testimony of five character witnesses, pursuant to rule 404(a)(1), which provides:

(a) Evidence of a person's character or character trait is not admissible for the purpose of proving action in conformity therewith on a particular occasion, except

(1) Evidence of a pertinent character trait offered:

(A) by an accused in a criminal case, or by the prosecution to rebut the same[.]

TEX.R. EVID. 404(a)(1)(A).

At trial, the following exchange took place during the questioning of defense witness, Calvin Phelps:

[Defense Counsel]: How do you know Mr. Melgar?

[Phelps]: I met Mr. Melgar when I got ready to build my first 6,000 square foot warehouse. I had gotten bids from other people and I asked him to meet me at the job site—

[Prosecutor]: Objection to relevance.

[The Court]: Sustained.

[Defense Counsel]: May we approach your Honor?

[The Court]: Sure.

[Defense Counsel]: Judge, I'm calling him as a character witness and I just want to go—I want the jury to know the extent that they know him so that they know when he testifies as to his character that he has the background sufficient to do that.

[The Court]: What character are you planning?

[Defense Counsel]: *Only trait of character that I think is in issue right now is whether he has enough knowledge to know whether or not he is an honest person or truthful, is really the character trait at issue and the character trait of whether he's a violent person.* So I'm just going to go—

[The Court]: That has to do with character in the community, not individual relationships. So unless he has knowledge of his charter in the community his testimony is irrelevant.

[Defense Counsel]: Well, my understanding is that I can ask him if he has a personal—do you have an opinion as to whether he's an honest person and also in terms of reputation character you have—do you have—do you know his reputation in the community for being an honest person.

[The Court]: All they've done is had business relationships.

[Defense Counsel]: If the Court is saying I can't ask him about reputation in the community, can I ask him about his personal knowledge, his personal opinion of his reputation.

[The Court]: No.

[Defense Counsel]: Those being two separate.

[The Court]: No. No.

[Defense Counsel]: Well, then I will—well, then I've got several character witnesses. I can rest and if I can make a bill after that.

[The Court]: If you're going to be bringing in people who've done business with him saying he's a good businessman—

[Emphasis added.]

The State then took each of the character witnesses on voir dire to show that they were not familiar with appellant's reputation in the community, and, thus, could not provide reputation evidence. The trial court sustained the State's objection, stating, "I find that Mr. Phelps, Mr. Volandsky, Mr. Rutherford, Mr. Ortiz and Mr. Honein do not qualify, pursuant to the statute and case law, to testify as reputation witnesses in the guilt/innocence phase of the trial."

Defense counsel then clarified his objection as follows:

Your Honor, just with regard to the character witnesses who took the stand outside the presence of the jury, *I just want to make clear that my objection is that I intended to proffer that evidence as opinion of character and that each of those gentlemen was to offer an opinion of character of Carlos Melgar.*

The trial court responded as follows:

And I understand. If it wasn't clear for the record, [defense counsel] had made a timely objection which I overruled in making my decision so that—you know, if it's not clear on the record, that was what I intended to do. So it's clear for you guys and gals at the Court of Appeals, if that becomes necessary. It is preserved.

[Emphasis added.]

### Was the Character Evidence Admissible?

■ Appellant argues that he should have been allowed to elicit evidence from character witnesses that he was a truthful, honest, nonviolent businessman. The State responds that such evidence is not admissible under rule 608, which provides:

(a) The credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation, but subject to these limitations:

(1) the evidence may refer only to character for truthfulness or untruthfulness; and

(2) evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise.

(b) Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility, other than conviction of crime as provided in Rule 609, may not be inquired into on cross-examination of the witness nor proved by extrinsic evidence.

Tex.R. Evid. 608. The State argues that because appellant's character for truthfulness had not been attacked, the character evidence regarding appellant's character for truthfulness was not admissible.

However, we note that rule 608 is an impeachment rule. Appellant was not seeking to admit the character witnesses' testimony in response to his having been impeached. Instead, he sought to admit their testimony to show that, in light of his character for truthfulness, honesty, and non-violence, it was unlikely that he committed the charged offense.

■ Generally, character evidence is not admissible to show that a person acted in conformity with a character trait on a particular occasion. Tex.R. Evid. 404(a). However, an accused in a criminal case is permitted to introduce evidence of a spe-

cific good-character trait to show that it is improbable that he committed the charged offense, when that character trait is relevant to the offense. *Id.; Valdez v. State*, 2 S.W.3d 518, 519 (Tex.App.-Houston [14th Dist.] 1999, pet. ref'd); *Thomas v. State*, 669 S.W.2d 420, 423 (Tex.App.-Houston [1st Dist.] 1984, pet. ref'd). A pertinent trait is "one that relates to a trait involved in the offense charged or a defense raised." *Spector v. State*, 746 S.W.2d 946, 950 (Tex.App.-Austin 1988, pet. ref'd).

▮ For example, in a prosecution for a crime of violence, the defendant's character for being peaceful is pertinent, because evidence of peaceful character makes it less likely that the defendant committed the crime. "In a murder case, the accused's reputation for peacefulness, or non-aggressive behavior, is the appropriate inquiry." *Wheeler v. State*, 67 S.W.3d 879, 882 n. 2 (Tex.Crim.App.2002) (quoting *Valdez v. State*, 2 S.W.3d 518, 520 (Tex.App.-Houston [14th Dist.] 1999, pet. ref'd)). Similarly, a defendant charged with sexual assault of a child is entitled to proffer evidence of his good character for "moral and safe relations with small children or young girls" under rule 404(a)(1)(A). *Wheeler v. State*, 67 S.W.3d at 882.

In *Thomas v. State*, the defendant, who was charged with aggravated sexual assault of a child, called five character witnesses to testify at the guilt-innocence phase of the trial. 669 S.W.2d at 421, 423. The trial court permitted the witnesses to testify that the defendant had a good reputation in the community for being peaceful and law-abiding, but did not permit them to testify that appellant had a good reputation in the community for being a moral person and for the safe and proper treat-

ment of young children. *Id.* This Court held that the trial court erred by excluding the proffered evidence because it was relevant to show the improbability that appellant raped his stepdaughter. *Id.* at 423–24.

In the case of *In re G.M.P.*, 909 S.W.2d 198, 201 (Tex.App.-Houston [14th Dist.] 1995, no pet.), the defendant, a juvenile, was charged with aggravated sexual assault. At trial, the defendant attempted to present testimony from a character witness that he had a reputation in the community for the "safe and moral treatment of children." *Id.* at 207. The Fourteenth Court of Appeals held that (1) the character trait at issue—the safe and moral treatment of children—was pertinent to the charged offense and (2) the crime was one of moral turpitude. *Id.* at 207–08. As such, the court held that the trial court erred by excluding the evidence proffered by the defendant's reputation witness. *Id.* at 208.

In this case, appellant was charged with kidnaping a car salesman to collect a debt. The evidence appellant sought to introduce was testimony from five other business associates who would testify that appellant was an honest, non-violent businessman, whom they trusted. As such, the evidence appellant sought to introduce was pertinent to the charged crime and admissible by appellant to show that, in light of his character, it was unlikely that he committed the charged offense.[1]

### Was the Character Evidence Offered in the Proper Form?

▮ Having decided that the tendered character evidence is generally admissible, we turn to whether the character evidence

---

1. We note that defendants do not often attempt to introduce such character evidence because "[b]y placing his character in issue, however, the accused 'opens the door' for the State to rebut evidence of his good character with its own evidence of the accused's bad character." *Wheeler v. State,* 67 S.W.3d 879, 886 (Tex.Crim.App.2002)

was offered in the proper form. The trial court excluded the character evidence because the witnesses were not familiar with the defendant's reputation for truthfulness in the community. Neither were the witnesses permitted to give their opinion as to appellant's truthfulness based on their business dealings with him.

■ If evidence of a person's character or character trait is admissible [under rule 404(a)(1)(A) ], proof may be made through **reputation or opinion** testimony. *See* TEX.R. EVID. 405(a). Therefore, the character witnesses' testimony was not inadmissible simply because it was in the form of an opinion rather than reputation. Under the Rules of Evidence, the rigid common-law distinction between opinion and reputation evidence has been relaxed. *See Murphy v. State*, 4 S.W.3d 926, 932–33 (Tex.App.-Waco 1999, pet. ref'd).

If evidence is offered in the form of an opinion, "a witness must have been familiar with . . . the underlying facts or information upon which the opinion is based, prior to the day of the offense." TEX.R. EVID. 405(a). In this case, the witnesses' opinions of appellant's character were formed through their business dealings with him, all of which occurred before the date of the offense.

Accordingly, we hold that appellant's proffered character evidence was relevant and admissible under rule 404(a)(1)(A). Furthermore, character evidence in the form of an opinion is a proper way of introducing such evidence under rule 405(a).

### Was the Improper Exclusion of Character Evidence Harmful?

■ Having found error, we next conduct a harm analysis to determine whether the error requires reversal of the trial court's judgment. Generally, the erroneous admission or exclusion of evidence is nonconstitutional error governed by Rule of Appellate Procedure 44.2(b) if the trial court's ruling merely offends the rules of evidence. *See Solomon v. State*, 49 S.W.3d 356, 365 (Tex.Crim.App.2001). When evaluating harm from nonconstitutional error flowing from the exclusion of relevant evidence, we "need only determine whether or not the error affected a substantial right of the defendant." *Morales v. State*, 32 S.W.3d 862, 867 (Tex. Crim.App.2000). To make such a determination, we must decide whether the error had a substantial or injurious effect on the jury verdict. *Id.*

For a case applying a harmless-error standard similar to this case, we look to *In re G.M.P.*, a juvenile case applying the civil harmless-error standard under former Rule of Appellate Procedure 81(b)(1). See In re G.M.P., 909 S.W.2d at 210–211 ("An appellate court shall not reverse a judgment on appeal unless the court finds that the error complained of amounted to such a denial of the rights of the appellant as was reasonably calculated to cause and probably did cause the rendition of an improper judgment. In other words, we are to determine if the trial court's errors denied appellant a fair trial.").

In *G.M.P.*, the defendant was prevented from putting on evidence of his good reputation for the safe and moral treatment of children. *Id.* at 211. The State argued that this error was harmless because the witness testified before the jury that she was comfortable allowing her 15–year–old son to be alone with the appellant. *Id.* The court noted that the purpose of allowing reputation evidence is to establish that it is improbable that the accused committed the crime. *Id.* The court concluded that, under the civil standard for harmless error, which is similar to that for nonconstitutional error in a criminal case, the defendant had been harmed by the exclu-

sion of reputation evidence because the evidence that was permitted was "not the same caliber of evidence as reputation testimony." *Id.*

In *Moody v. State,* the defendant, who was charged with indecency with a child, was not permitted to put on "good character evidence" of his reputation for the ethical treatment of children. Nos. 01–05–00395–CR, 01–05–00396–CR, 01–05–00397–CR, 01–05–00398–CR, 2006 WL 3230204 (Tex.App.-Houston [1st Dist.] Nov. 9, 2006, no pet.) (not designated for publication). This Court held that the trial court erred in refusing to permit the "good character" evidence, and that such error was harmful. *Id.* at \*3–4. We noted that there were only two witnesses to the alleged indecent acts, no physical evidence, and no alibi evidence. *Id.* at \*5. Because the excluded evidence went to the heart of the defendant's sole defense, we could not say with fair assurance that the jury would not have been influenced had it been allowed to hear evidence that appellant had a reputation in his community for treating children ethically or morally. *Id.*

In this case, the evidence presented two opposing versions of the events. Appellant, Martinez, and Velasquez testified that Amaya got into his car voluntarily so that they could drive to the bank to get the money that Amaya owed appellant. When Amaya mentioned that the bank might be closed, he asked appellant to drop him at the McDonald's, which appellant did. However, Amaya testified that he was forced into appellant's car at gunpoint, and, after being threatened with being shot if he did not repay the debt, was forcibly thrown out of the car at McDonald's. The excluded evidence in this case went to the heart of appellant's sole defense—that, in light of the opinions given by his business associates regarding his honesty, truthfulness, and lack of violence,

it was unlikely that appellant would kidnap someone in an effort to collect a debt. We cannot say with fair assurance that the jury would not have been influenced had it been allowed to hear evidence that five of appellant's business associates considered him an honest, truthful, non-violent person.

Accordingly, we sustain point of error one.

## CONCLUSION

Having sustained appellant's first point of error regarding the exclusion of character evidence, we reverse the judgment of the trial court and remand for further proceedings. Because the remaining points of error would entitle appellant to no more relief than that we have already ordered, we need not address appellant's remaining points and decline to do so. We overrule all pending motions.