**Opinion issued November 20, 2014**



**In The**

# Court of Appeals

**For The**

# First District of Texas

————————————

## NO. 01-12-01125-CR

————————————

**GARY WAYNE WILSON, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 209th District Court**
**Harris County, Texas**
**Trial Court Case No. 1068173**

---

## O P I N I O N

Appellant, Gary Wayne Wilson, was charged by indictment with aggravated sexual assault of a child.[1]  The jury found him guilty and assessed punishment at life imprisonment.  In one issue on appeal, Appellant argues that the trial court

---

[1] *See* TEX. PENAL CODE ANN. §§ 21.02(b), (h), 22.021(a)(1)(B) (Vernon Supp. 2014).

abused its discretion by excluding evidence of his good character for moral and safe conduct around young children.

We reverse and remand for a new trial.

## Background

KM's parents separated around early 2001, when KM was almost four years old. After the separation, KM, his older brother, his older sister, and his younger brother lived with their mother. Some time after the separation, KM's mother started dating Appellant. Appellant moved in with KM and his family in 2002. KM made the outcry of sexual abuse six months later.

KM's father testified at trial that, early in his youth, KM had been a happy child. He testified that this behavior started to change around the time that Appellant moved in with KM's family. Over time, KM has been diagnosed with multiple psychological disorders, including attention deficit hyperactivity disorder, bipolar disorder, and post-traumatic stress disorder. KM has been prescribed medication for his disorders and has been admitted into psychological treatment centers numerous times in his childhood. A doctor from one of these facilities testified that KM suffered hallucinations, including voices telling him to hurt his mother. By the age of 15—his age at the time of trial—KM had been charged with multiple crimes, including assault of his sister and making a terroristic threat.

2

KM's father acknowledged that KM had a history of being manipulative and telling lies.

KM testified at length and in detail about the sexual assaults to which he described Appellant subjecting him. He testified that Appellant sexually assaulted him two to five times every month from the time Appellant moved in with the family until October 2005, when KM was removed from the home. He described six of those instances in detail. In addition, KM testified about physical abuse he suffered from Appellant. KM and his sister both testified that Appellant would regularly walk around the house naked, would have sex with KM's mother in front of the children, and would leave pornographic magazines lying around the house. KM testified that Appellant threatened to kill KM and his father if KM ever told anyone about the abuse.

KM's sister testified that she once saw Appellant sexually assaulting KM by penetrating KM's anus with Appellant's penis. She testified that Appellant threatened to kill her and her father if she told anyone about what she saw. She also witnessed Appellant physically assault KM on multiple occasions.

After he made his outcry about sexual assault, KM was given a physical examination. Dr. M. Donaruma testified for the State about the results of the examination. She testified that KM's physical examination was "an abnormal anal exam" with the discovery of "a healing tear around his anal opening" that "would

3

be consistent with a sexual assault of the anus." She also testified that there were multiple possible explanations of what caused the tear and that it is commonly "unlikely" to see an injury as the result of a sexual assault of the anus because the anus can typically accommodate objects the size of a penis.

Dr. L. Thompson, the director of therapy and psychological services at the Harris County Children's Assessment Center, testified as the State's expert about certain psychological characteristics that were prevalent in victims of sexual abuse. These characteristics included sleep difficulties, appetite difficulties, anxiety disorders, and interpersonal difficulties. The record established that KM suffered from a number of the characteristics described by Dr. Thompson. Nevertheless, Dr. Thompson was careful to explain that "although there might be a higher incidence of [a] certain problem in people who have been [sexually] abused, there may be more than one thing that could cause that particular problem."

For his case-in-chief, Appellant sought to present nine witnesses to testify about Appellant's character regarding moral and safe conduct around children. These witnesses were two of Appellant's daughters, his son, his brother, a friend, a nephew-in-law, his current girlfriend, his girlfriend's mother, and a niece. The State objected that the testimony was improper bolstering and was not relevant. The trial court sustained the objections and denied the request to allow the people to testify.

4

Appellant presented the testimony of the nine witnesses in an offer of proof. All nine people testified that they had seen Appellant around young children on many occasions, that they had "an opinion regarding [Appellant's] character regarding moral and safe conduct around children," and that their opinion of Appellant's character was "good."

## Exclusion of Evidence

In his sole issue, Appellant argues that the trial court abused its discretion by excluding evidence of his good character for moral and safe conduct around young children.

## A. Preservation

As an initial matter, the State argues that Appellant failed to preserve this issue for appellate review. As the State correctly points out, the Texas Rules of Appellate Procedure require,

> (a) In General. As a prerequisite to presenting a complaint for appellate review, the record must show that:
>
> > (1) the complaint was made to the trial court by a timely request, objection, or motion that:
> >
> > > (A) stated the grounds for the ruling that the complaining party sought from the trial court *with sufficient specificity to make the trial court aware of the complaint*, unless the specific grounds were apparent from the context . . . .

TEX. R. APP. P. 33.1(a)(1)(A) (emphasis added). The State argues that, because Appellant failed to present the trial court with relevant case law supporting his position that the testimony he sought to have admitted was admissible after the trial court asked him if he had such case law, Appellant failed to preserve the issue for appellate review.

The State misconceives what constitutes "the complaint" as provided in rule 33.1. A stated intent to present evidence is not a "complaint." Appellant informed the trial court he would present the testimony of people concerning his "character regarding moral and safe conduct around children." It was the State that objected to this evidence, arguing that it constituted improper bolstering and was not relevant. These objections are "the complaint[s] made to the trial court by a timely request, objection, or motion." *Id.* The trial court sustained those objections, and the Appellant now "present[s] those complaint[s] for appellate review." *Id.*

The State's reliance on rule 103 of the Texas Rules of Evidence is similarly misplaced. Rule 103 provides,

> (a)  Effect of Erroneous Ruling. Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and
>
> > (1)  Objection. *In case the ruling is one admitting evidence*, a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context. . . .

6

(2) Offer of proof. In case the ruling is one excluding evidence, the substance of the evidence was made known to the court by offer, or was apparent from the context within which questions were asked.

TEX. R. EVID. 103 (emphasis added).

The State argues that Appellant failed to satisfy the requirements of rule 103(a)(1). By its plain language, however, it is apparent that rule 103(a)(1) only applies to evidence that was *admitted*. TEX. R. EVID. 103(a)(1). Appellant's evidence was excluded. Accordingly, rule 103(a)(1) does not apply. Instead, for excluded evidence, rule 103(a)(2) applies, requiring Appellant to make an offer of proof, informing the court of the substance of the excluded evidence. TEX. R. EVID. 103(a)(2). Appellant made just such an offer of proof.

We hold the issue has been preserved for review.

## B. Error

Next, we consider whether the trial court abused its discretion by excluding the requested evidence. We review a trial court's decision to admit or exclude evidence under an abuse of discretion standard. *Shuffield v. State*, 189 S.W.3d 782, 793 (Tex. Crim. App. 2006). We will not reverse a trial court's ruling unless that ruling falls outside the zone of reasonable disagreement. *Torres v. State*, 71 S.W.3d 758, 760 (Tex. Crim. App. 2002).

Generally, "[e]vidence of a person's character or character trait is not admissible for the purpose of proving action in conformity therewith on a

7

particular occasion." TEX. R. EVID. 404(a). "However, an accused in a criminal case is permitted to introduce evidence of a specific good-character trait to show that it is improbable that he committed the charged offense, when that character trait is relevant to the offense." *Melgar v. State*, 236 S.W.3d 302, 306–07 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd) (citing TEX. R. EVID. 404(a)(1)(A)).

Appellant asked the trial court to allow nine people to testify about Appellant's character. During the offer of proof, all nine people testified that they had seen Appellant around young children on many occasions, that they had "an opinion regarding [Appellant's] character regarding moral and safe conduct around children," and that their opinion of Appellant's character was "good." The State objected that the testimony was improper bolstering. The trial court denied the request to allow the people to testify as identified. On appeal, Appellant acknowledges that two of the people presented to testify did not know Appellant during the time period in question and, accordingly, their opinion about Appellant's character regarding conduct around children would not be relevant. Appellant argues, however, that the remaining seven people should have been allowed to testify.

A defendant charged with aggravated sexual assault is "entitled to proffer evidence of his good character (or propensity) for moral and safe relations with small children or young [boys]." *Wheeler v. State*, 67 S.W.3d 879, 882 (Tex.

Crim. App. 2002) (citing TEX. R. EVID. 404(a)(1)(A)).  Excluding such evidence is an abuse of discretion.  *See Thomas v. State*, 669 S.W.2d 420, 423–44 (Tex. App.—Houston [1st Dist.] 1984, pet. ref'd) (reversing judgment based on exclusion of good-character evidence).

Appellant was charged with aggravated sexual assault of KM. The seven witnesses in question were prepared to testify that Appellant had a good character regarding moral and safe conduct around children.  This is permissible under rule 404 and directly relevant to offense with which he had been charged.

We hold the trial court abused its discretion by excluding this evidence.

## C.    Type of Error

Having determined that the trial court's ruling was error, we must consider whether the error was harmful.  *See* TEX. R. APP. P. 44.2.  Different types of error, however, have different standards of review for harm.  *See id.*  So we must determine what kind of error was committed.

In general, errors in criminal cases are divided between constitutional errors and non-constitutional errors.  *See id.*  For constitutional errors, "the court of appeals must reverse a judgment of conviction or punishment unless the court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment." TEX. R. APP. P. 44.2(a).  For non-constitutional errors,

9

any error "must be disregarded" unless the error affects Appellant's substantial rights. TEX. R. APP. P. 44.2(b).

"Generally, the erroneous admission or exclusion of evidence is nonconstitutional error . . . ." *Melgar*, 236 S.W.3d at 308. Erroneous exclusion of evidence can rise to the level of constitutional error, however, when the excluded evidence "forms such a vital portion of the case that exclusion effectively precludes the defendant from presenting a defense." *Potier v. State*, 68 S.W.3d 657, 665 (Tex. Crim. App. 2002).[2] "Trials involving sexual assault may raise particularly evidentiary and constitutional concerns because the credibility of both the complainant and defendant is a central, often dispositive issue." *Hammer v. State*, 296 S.W.3d 555, 561 (Tex. Crim. App. 2009). While excluding testimony that would "incrementally" further the defendant's defensive theory is not constitutional error, excluding evidence that "goes to the heart of the defense" is. *See Ray v. State*, 178 S.W.3d 833, 836 (Tex. Crim. App. 2005) (holding erroneously excluding testimony that incrementally furthers defense is non-constitutional error); *Wiley v. State*, 74 S.W.3d 399, 405 (Tex. Crim. App. 2002)

---

[2] It can also rise to the level of constitutional error "when a state evidentiary rule categorically and arbitrarily prohibits the defendant from offering relevant evidence that is vital to his defense." *Ray v. State*, 178 S.W.3d 833, 835 (Tex. Crim. App. 2005). This circumstance is not applicable to our current analysis, however.

(holding erroneously excluding testimony that "goes to the heart of the defense" is constitutional error).

Appellant argues that the testimony of his family and friends concerning his character was his only defense and that, accordingly, its exclusion amounts to constitutional error. We must agree.

Appellant presented one witness during the guilt-innocence phase of the trial. He presented his biological daughter, who testified that she and Appellant's biological son lived with Appellant off-and-on during the time in question. No further testimony was presented. While Appellant cross-examined many of the State's witnesses, no identifiable defensive theory was developed in the course of the cross-examination. Appellant's closing argument consisted solely of urging the jury to consider that the State had not carried its evidentiary burden. Appellant's counsel even implored the jury to consider the difficulty of how Appellant could "defend [himself] against that kind of allegation."

A review of the record indicates, then, that Appellant's sole available defense was the testimony of his friends and family that such actions are not in keeping with his character. That testimony did not only go to the heart of his defense, *see Wiley*, 74 S.W.3d at 405; it was the sum total of his defense. Additionally, Appellant's credibility and character are pivotal matters in this case.

11

*See Hammer*, 296 S.W.3d at 561. Accordingly, we hold that the exclusion of the evidence was constitutional error.

**D.  Harm**

When an error is determined to be constitutional error, "the court of appeals must reverse a judgment of conviction or punishment unless the court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment." TEX. R. APP. P. 44.2(a). The mere fact that there is other evidence that could support conviction does not establish that the error is harmless. *McCarthy v. State*, 65 S.W.3d 47, 55 (Tex. Crim. App. 2001). Instead, "[i]f there is a reasonable likelihood that the error materially affected the jury's deliberations, then the error is not harmless beyond a reasonable doubt. The reviewing court should calculate, as nearly as possible, the probable impact of the error on the jury in light of the other evidence." *Id.*

As we have noted, trials concerning allegations of sexual assault depend heavily on credibility determinations between two competing claims of what happened. *See Hammer*, 296 S.W.3d 561–62. This case is no different. It is well acknowledged, however, that a court of appeals reviewing a cold record is ill suited to make determinations of credibility much less to weigh them. *See Lancon v. State*, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008). "The jury is in the best position to judge the credibility of a witness because it is present to hear the

testimony, as opposed to an appellate court who relies on the cold record." *Id.* As a result, we must "afford almost complete deference to a jury's" determination of credibility, and "the jury is the sole judge of what weight to give such testimony." *Id.*

KM testified at length and in detail about the sexual assaults to which he described Appellant subjecting him. The record also established, however, that KM had a history of lying and of being manipulative. He has been diagnosed with attention deficit hyperactivity disorder, bipolar disorder, and post-traumatic stress disorder. The record established that he suffered hallucinations, including voices telling him to hurt his mother.

KM's sister testified that she saw Appellant rape KM on one occasion. But we cannot exclude the possibility that she could have motivations to testify other than to give an unaltered account of what she observed, a matter that could be informed by determinations of credibility.

Other than the testimony of KM and his sister, there is little evidence in the record identifying Appellant as the perpetrator of the sexual assaults with which he was charged. There was testimony from other witnesses concerning KM's outcry, but the veracity of those outcry statements ultimately return to determinations of KM's credibility.

Dr. Donaruma testified that KM's physical examination following his outcry was "an abnormal anal exam" with the discovery of "a healing tear around his anal opening" that "would be consistent with a sexual assault of the anus." But she also testified that there were multiple possible explanations of what caused the tear and that it is commonly "unlikely" to see an injury as the result of a sexual assault of the anus because the anus can typically accommodate objects the size of a penis. Even if we determined that a jury would conclude that the evidence was indicative of a sexual assault, however, this evidence would not compel the conclusion that Appellant committed the assault.

Similarly, Dr. Thompson testified about certain psychological characteristics that were prevalent in victims of sexual abuse. These characteristics included sleep difficulties, appetite difficulties, anxiety disorders, and interpersonal difficulties. The record established that KM suffered from a number of the characteristics described by Dr. Thompson. Nevertheless, Dr. Thompson was careful to explain that "although there might be a higher incidence of [a] certain problem in people who have been [sexually] abused, there may be more than one thing that could cause that particular problem."

We endeavor to emphasize that we do not assert that KM's testimony—or the testimony of any witness presented by the State—was motivated by anything other than a sincere desire to describe the events as they actually happened.

14

Nothing in this opinion is meant to impugn the motives or intentions of KM.  The physical and emotional difficulties he has suffered are apparent from the record, and we do not make light of them or castigate him because of them.

Instead, our concern lies with our very inability to make such determinations concerning any of the testifying witnesses in the presence of a cold record.  Credibility determinations are wisely entrusted to the trier of fact for this very reason.  None of the evidence directly identifying Appellant as the perpetrator of sexual assault was free from the need of credibility determinations.

Just as we cannot assess matters concerning the credibility of the State's witnesses presented at trial, we likewise cannot assess how the jury would have assessed the credibility of the seven witnesses offered by the defense to testify on Appellant's good character regarding moral and safe conduct around children.  A jury swayed by the credibility of these seven witnesses and with questions on the credibility of the State's witnesses certainly could be materially affected in their deliberations.  *See McCarthy*, 65 S.W.3d at 55 (holding error is not harmless beyond a reasonable doubt if there is reasonable likelihood that error materially affected jury's deliberations).  Because we cannot make this determination, we are required to reverse and remand for a new trial.

We sustain Appellant's sole issue.

## Conclusion

We reverse and remand for a new trial.

Laura Carter Higley
Justice

Panel consists of Justices Jennings, Higley, and Sharp.

Justice Sharp, dissenting from the judgment.

Publish.  TEX. R. APP. P. 47.2(b).

16