**Opinion filed April 7, 2022**



# In The

# Eleventh Court of Appeals

_____

## No. 11-20-00143-CR

_____

## JOSE CRUZ HOLGUIN III, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 441st District Court**
**Midland County, Texas**
**Trial Court Cause No. CR50621**

## M E M O R A N D U M   O P I N I O N

A jury in Midland County convicted Appellant of one count of continuous violence against the family, a third-degree felony. TEX. PENAL CODE ANN. § 25.11 (West Supp. 2021). The jury assessed Appellant's punishment at confinement for three years in the Institutional Division of the Texas Department of Criminal Justice and recommended that the sentence be suspended. The trial court sentenced Appellant accordingly and placed him on community supervision for a term of six

years.  Appellant challenges his conviction in two issues on appeal.  First, Appellant argues that the evidence is insufficient to sustain his conviction because there is a fatal variance between the named victim in the indictment and the actual victim proved by the State at trial.  Second, Appellant argues that the trial court reversibly erred by excluding five character witnesses who would have testified that Appellant has a good reputation for the ethical treatment of women.  We affirm.

*Background Facts*

Appellant was indicted on five counts.[1]  He was ultimately acquitted of all but count one, which charged him with continuous violence against the family.  Count one alleged that Appellant committed two acts of violence within a twelve-month period against "*Ann Rose*," a pseudonym used by the State to identify the victim.  Specifically, the indictment alleges that, on or about October 23, 2017, Appellant pushed, grabbed, or threw *Ann Rose* to the floor and that, on or about August 19, 2017, he grabbed and pulled *Ann Rose* by the hair.

Following voir dire, and after the jury had been seated and sworn in, Appellant moved for a mistrial on the grounds that the named victim in the indictment, *Ann Rose*, did not match the name of the actual victim in this case, *Virginia McMahan*.  The name "*Ann Rose*" was never mentioned during voir dire by either party, but the State questioned venirepersons as to whether they knew Virginia McMahan or her daughters and whether they could be impartial notwithstanding that familiarity.  This was not the first time, however, that Appellant was apprised of the fact that the charges against him concerned Virginia McMahan and not the pseudonymous *Ann Rose*.  Almost five months before voir dire, the State provided Appellant with its

---

[1]The indicted offenses were: Count 1-Continuous violence against the family; Count 2-Obstruction or retaliation; Count 3-Assault by Choking; Count 4-Assault by choking; and Count 5-Assault by Choking.

witness list for trial. The list began with Virginia McMahan, followed by her daughters and her best friend from the time period during which she was dating Appellant, among others. *Ann Rose* appeared nowhere on that list. Neither Appellant nor his trial counsel argued, in support of Appellant's motion for mistrial, that the variance between the named victim in the indictment and the actual victim to be proved at trial caused any unfair surprise or insufficient notice. The trial court denied Appellant's motion for mistrial.

Virginia McMahan, her daughters, her best friend, the McMahans' family violence therapist, and a detective from the Midland Police Department testified during the State's case-in-chief. After the State rested, Appellant sought to elicit testimony from five character witnesses that Appellant had a good reputation for treating women ethically. The State objected to each on relevance grounds, and the trial court sustained each objection. Two other witnesses testified for Appellant and stated that Virginia McMahan has a bad reputation for dishonesty.

During his closing argument, Appellant's trial counsel argued that Virginia McMahan was embittered by Appellant's habitual infidelity and lied about the physical assaults on her person in order to exact revenge against Appellant. Appellant's trial counsel had made this same argument in his opening statement to the jury. Appellant also cross-examined Virginia McMahan about her motivation to lie about Appellant seeking revenge for his infidelity. In short, from start to finish, Appellant's theory of the case was that the accusations against him were fabricated by the complaining witness because she was angry with him for routinely cheating on her.

The jury acquitted Appellant of counts two through five of the indictment and returned a verdict of guilty for count one: continuous violence against the family. On appeal, Appellant argues that he is entitled to an acquittal because the evidence

was insufficient to support his conviction insofar as the offense proved at trial involved a different victim than the one named in the indictment. In the alternative, Appellant argues that his conviction should be reversed and the cause remanded for a new trial because the trial court abused its discretion by excluding five witnesses from testifying that Appellant has a good reputation for treating women ethically. We overrule both issues and affirm the judgment of the trial court.

*Discussion*

I. *Sufficiency of the Evidence*

A. *Standard of Review and Applicable Law*

"In *Jackson v. Virginia*, the Supreme Court held that federal due process requires that the State prove, beyond a reasonable doubt, every element of the crime charged." *Byrd v. State*, 336 S.W.3d 242, 246 (Tex. Crim. App. 2011) (citing *Jackson v. Virginia*, 443 U.S. 307, 316 (1979)). "Under Texas state law, we measure the sufficiency of the evidence 'by the elements of the offense as defined by the hypothetically correct jury charge for the case.'" *Id.* (quoting *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). "Thus, we apply the *Jackson* standard of review to the hypothetically correct jury charge."[2] *Id.* (citing *Malik*, 953 S.W.2d at 240; *Gollihar v. State*, 46 S.W.3d 243, 257 (Tex. Crim. App. 2001)). "But sometimes the words in the indictment do not perfectly match the proof at trial." *Id.*

"A 'variance' occurs when there is a discrepancy between the allegations in the charging instrument and the proof at trial." *Gollihar*, 46 S.W.3d at 246. "[V]ariance claims [are] insufficiency of the evidence problems." *Id.* at 247. But "not every variance between the evidence at trial and the indictment is fatal."

---

[2]A hypothetically correct jury charge is one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, *and adequately describes the particular offense for which the defendant is tried*." *Byrd*, 336 S.W.3d at 246 (citing *Malik*, 953 S.W.2d at 240) (emphasis added).

4

*Stevens v. State*, 891 S.W.2d 649, 650 (Tex. Crim. App. 1995). Thus, "a materiality inquiry should be made in all cases, like this one, that involve a 'sufficiency of the evidence claim based upon a variance between the indictment and the proof' and . . . only a 'material' variance will render the evidence insufficient." *Fuller v. State*, 73 S.W.3d 250, 253 (Tex. Crim. App. 2002) (emphasis added) (quoting *Gollihar*, 46 S.W.3d at 257). In a legal sufficiency analysis, unless the variance is material, it should be disregarded. *Hernandez v. State*, No. 01-16-00453-CR, 2017 WL 6327371, at *3 (Tex. App.—Houston [1st Dist.] Dec. 12, 2017, pet. ref'd) (mem. op., not designated for publication) (citing *Gollihar*, 46 S.W.3d at 257–58). "[A] variance that is not prejudicial to a defendant's 'substantial rights' is immaterial." *Gollihar*, 46 S.W.3d at 248.

A variance is not prejudicial to a defendant's substantial rights—and thus not grounds for acquittal on the basis of insufficient evidence—when two conditions are satisfied. First, the indictment, as written, must inform the defendant of the charge against him sufficiently to allow him to prepare an adequate defense at trial. *Id.* (citing *United States v. Sprick*, 233 F.3d 845, 853 (5th Cir. 2000)). Second, prosecution under the deficiently drafted indictment must not subject the defendant to the potential risk of a subsequent prosecution for the same crime. *Id.* "[T]he burden of demonstrating surprise or prejudice rests with the defendant." *Santana v. State*, 59 S.W.3d 187, 194 (Tex. Crim. App. 2001).

> B. *The evidence was sufficient—Appellant had adequate notice of the charges against him, and he was not at risk of double jeopardy for the same offense.*

Appellant argues that the variance between the named victim in the indictment, *Ann Rose*, and the actual victim proved at trial, *Virginia McMahan*, was material. As a result, Appellant asserts that he did not receive fair notice of the State's intent to charge him with offenses against McMahan and that he is now

exposed to the risk of double jeopardy for the same offenses indicted under a different victim's name. But the State responds that the variance is immaterial. It asserts that Appellant was neither surprised nor deprived of notice of the State's intent to prosecute him for offenses committed against McMahan, as evidenced by Appellant's own assertions and those of his counsel at trial. Further, the State asserts that Appellant is not at risk of double jeopardy because a transcript of the trial record from this case would easily bar any subsequent attempts by the State to prosecute Appellant a second time by using Virginia McMahan's name in a future indictment. We agree with the State.

1. *The notice prong.*

As the State correctly pointed out to the trial court, "[T]he witness list contained the right name, Virginia McMahan. . . . [A]ll the offense reports that ha[d] been provided to [Appellant] through TechShare d[id], in fact . . . list her, Virginia McMahan, as the complaining witness[.]" Further, we are persuaded by the fact that, during a pretrial hearing on Appellant's motion for a mistrial, Appellant and his trial counsel both represented to the trial court that they were *not* surprised that the complaining witness in the case was Virginia McMahan, notwithstanding that the named victim in the indictment was *Ann Rose*. The record is clear on this point:

> [PROSECUTOR]: And, Your Honor, if I may.
>
> THE COURT: Yes, sir.
>
> [PROSECUTOR]: We all know Ann Rose is a pseudonym. The Defense isn't surprised that it's -- Virginia McMahan is the one -- is the alleged victim. This is not a surprise.
>
> . . . .
>
> [APPELLANT'S COUNSEL]: . . . I'm not here alleging surprise. I saw the indictment. And as an experienced criminal defense attorney, I waited, because I was not given notice of the pseudonym.

6

I'm not claiming -- I'm not claiming surprise. I'm not claiming notice. I'm saying they have not complied.

. . . .

[PROSECUTOR]: . . . [W]e can totally do a trial -- there's no surprise and changing the trial amendment. It wouldn't substantially change the charge. It would be the same charge.

Thus, we are unable to entertain Appellant's complaint that he was deprived of the requisite fair notice by the State's use of the pseudonym "*Ann Rose*" in the indictment. Appellant and his trial counsel appear to have received fair notice, if not actual knowledge, of this matter prior to trial. However, Appellant's trial counsel *did* complain when the motion for mistrial was presented that the variance exposed Appellant to the risk of double jeopardy. The trial court denied Appellant's motion, relying on *Stevens*, 891 S.W.2d 649. We will consider, therefore, whether the double jeopardy prong of the fatal variance doctrine entitles Appellant to the relief he seeks.

2. *The double-jeopardy prong.*

After reviewing the record, we are convinced that the State's use of the pseudonym "*Ann Rose*" in the indictment, does not expose Appellant to the risk of double jeopardy for any of the offenses with which the State charged him or could subsequently charge him. Where the charging instrument uses a pseudonym but the State proves at trial that the complaining witness goes by a different name, the Court of Criminal Appeals has held that defendants are not exposed to the risk of double jeopardy when the record clarifies that the name in the charging instrument and the complaining witness are one-and-the-same person. *See Fuller*, 73 S.W.3d at 254; *see also Santana*, 59 S.W.3d at 195–96 (holding that the defendant did not face double jeopardy because, "if prosecuted again, [he] may avail himself of the entire record and not merely the charging instrument"); *Gollihar*, 46 S.W.3d at 258

(holding that "entire record, not just indictment, may be referred to in protecting against double jeopardy in event of subsequent prosecution").

The trial record is replete with evidence that *Ann Rose* and Virginia McMahan are one-and-the-same person. The following excerpts are examples of references that sufficiently connect the name *Ann Rose* to Virginia McMahan. From the State's opening statement:

> [THE STATE]: You are going to hear from . . . the victim, Ms. McMahan. Okay. You will hear that Ms. McMahan is, in fact, the same person as the Ann Rose that you just heard read from the indictment.

Direct examination of McMahan by the State, during the State's case-in-chief:

> [THE STATE]: [W]e've talked to you about the name on the indictment being Ann Rose.
>
> [MCMAHAN]: That's correct.
>
> [THE STATE]: Okay. Who is Ann Rose?
>
> [MCMAHAN]: Me.
>
> [THE STATE]: Okay. How are you Ann Rose?
>
> . . . .
>
> [MCMAHAN]: Whenever I came to the DA's office, I talked to a person that works for the DA's office and we decided that because of my work and just overall protection, because some information is public, to give me an alias.
>
> [THE STATE]: Okay. And that alias was?
>
> [MCMAHAN]: Anna [sic] Rose.
>
> [THE STATE]: Ann Rose?
>
> [MCMAHAN]: (Indicated in the affirmative).

In the event of any subsequent prosecution for these same charges—but with an indictment using a name other than "*Ann Rose*"—all Appellant must do to have the

8

charges dismissed is to submit portions of the record to the trial court in a pretrial double jeopardy motion or hearing. *See Santana*, 59 S.W.3d at 195–96; *Gollihar*, 46 S.W.3d at 258. We conclude, therefore, that the variance between the named victim in the indictment, *Ann Rose*, and the victim proved at trial, Virginia McMahan, was immaterial because it did not expose Appellant to the risk of duplicative prosecutions in violation of his double jeopardy rights.

We hold that Appellant is not entitled to an acquittal under the fatal variance doctrine. Thus, the evidence supporting his conviction is sufficient. We overrule Appellant's first issue on appeal. We now proceed to consider Appellant's complaint that the trial court reversibly erred by excluding five character witnesses from testifying as to Appellant's good reputation for the ethical treatment of women.

## II. *Exclusion of Character Evidence*

### A. *Standard of Review*

We review a trial judge's decision on the admissibility of evidence under an abuse of discretion standard and will not reverse it if it is within the zone of reasonable disagreement. *Tillman v. State*, 354 S.W.3d 425, 435 (Tex. Crim. App. 2011). "If the trial court's evidentiary ruling is correct under any applicable theory of law, it will not be disturbed even if the trial court gave a wrong or insufficient reason for the ruling." *Johnson v. State*, 490 S.W.3d 895, 908 (Tex. Crim. App. 2016).

### B. *The trial court did not err in excluding character witnesses regarding Appellant's good reputation for "the ethical treatment of women."*

#### 1. *Applicable Law*

Generally, "[e]vidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with

the character or trait." TEX. R. EVID. 404(a)(1). However, in a criminal case, "a defendant may offer evidence of . . . [his] pertinent trait." *Id.* R. 404(a)(2)(A). That is to say, "an accused in a criminal case is permitted to introduce evidence of a specific good-character trait to show that it is improbable that he committed the charged offense, when that character trait is relevant to the offense." *Wilson v. State*, 451 S.W.3d 880, 885 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd) (quoting *Melgar v. State*, 236 S.W.3d 302, 306–07 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd)). Evidence is relevant if it has *any* tendency to make a material fact more or less probable than it would be without that evidence. TEX. R. EVID. 401. "A character trait is relevant if it is one that relates to a trait involved in the offense charged or a defense raised." *Reighley v. State*, 585 S.W.3d 98, 103 (Tex. App.—Amarillo 2019, pet. ref'd) (quoting *Melgar*, 236 S.W.3d at 307). When evidence of a person's character trait is admissible, "it may be proved by testimony about the person's reputation or by testimony in the form of an opinion." TEX. R. EVID. 405(a)(1).

### 2. *Analysis*

Whether a good reputation for the ethical treatment of women constitutes a pertinent character trait depends on whether it relates to a trait involved in the offense of continuous violence against the family. *See, e.g.*, *Melgar*, 236 S.W.3d at 307. A person commits the offense of continuous violence against the family when—twice or more during a period of twelve months or less—the actor intentionally, knowingly, or recklessly causes bodily injury[3] to a member of one's family[4] or household,[5] or to a person with whom the actor has or had a continuing relationship

---

[3] PENAL § 22.01(a)(1).

[4] TEX. FAM. CODE ANN. § 71.003 (West 2019).

[5] FAM. § 71.005.

of a romantic or intimate nature.[6] PENAL § 25.11. For reasons explained below, we conclude that the character trait of *generally* treating women well is not pertinent to whether a defendant was likely to have caused bodily injury to a romantic partner or member of their family or household.

In *Turner v. State*, the Second Court of Appeals held that the trial court abused its discretion, in a murder case, by excluding a character witness from testifying that, in his opinion, the defendant was neither aggressive nor violent. 413 S.W.3d 442, 453 (Tex. App.—Fort Worth 2012, no pet.). The *Turner* court explained that, "in a prosecution for a crime of violence, the defendant's character for being peaceful is pertinent because evidence of peaceful character makes it less likely that the defendant committed the crime." *Id.*

Similarly, in *Wilson*, where the defendant was charged with aggravated sexual assault of a child, the First Court of Appeals held that the trial court abused its discretion by excluding the testimony of seven defense witnesses who would have testified that the defendant "had a good character regarding moral and safe conduct around children." 451 S.W.3d at 886. The *Wilson* court explained that the character trait of being moral and safe around children was "directly relevant to [the] offense with which he had been charged." *Id.*

In *Melgar*, where the defendant was charged with kidnapping a salesman to collect a debt, the First Court of Appeals also held that the trial court abused its discretion by excluding the testimony of five business associates who would have testified that the defendant is "an honest, non-violent businessman, whom they trusted." 236 S.W.3d at 307. His reputation among business associates as honest and non-violent was pertinent because he was charged with intentionally or

---

[6]FAM. § 71.0021.

11

knowingly abducting a business associate to settle his debts. *See* PENAL § 20.03 (defining "kidnapping").

In *Hamman v. State*, where the defendant was charged with embezzlement, the Court of Criminal Appeals held that the trial court abused its discretion in excluding witnesses who would have testified that the defendant's "general reputation for honesty and fair dealings was good." 314 S.W.2d 301, 305 (Tex. Crim. App. 1958). Honesty was pertinent because Hamman was charged with a crime of *dis*honesty, namely, embezzlement.

Lastly, in *Foley v. State*, where the defendant was charged with driving while intoxicated, the Court of Criminal Appeals held that the trial court abused its discretion by excluding a witness from testifying that the defendant's general reputation for sobriety was good. 356 S.W.2d 686, 687 (Tex. Crim. App. 1962). One's reputation for sobriety was relevant because an essential element of the offense with which Foley was charged was that he was *not* sober.

In most of the cases cited above, the character trait in question pertained directly to the nature of *the act* involved in the commission of the offense. Honesty, peacefulness, and sobriety were pertinent insofar as they were directly incompatible with embezzling, murdering, and drunk driving, respectively. However, in other cases, the character trait was pertinent because of the nature of *the victim* involved in the charged offense. If, for instance, in *Wilson*, the defense had offered character witnesses to testify that the defendant had a good reputation for moral and safe conduct around adults, rather than children, the testimony may have been properly excluded because such a trait was not pertinent to whether the defendant likely sexually assaulted *a child*. Similarly, the issue before us turns on the character trait Appellant sought to elicit and its connection to the nature of the victim contemplated by the offense of continuous violence against the family. *See* PENAL § 25.11. The

12

connection is not that the victim was a female, it is, rather, that the victim was family and a romantic partner with its informal, private, and extended interactions.

Appellant was convicted of continuous violence against the family, in part, because the victim, Virginia McMahan, belonged to a protected class recognized under Section 25.11 of the Penal Code. PENAL § 25.11. Section 25.11 dictates that one protected class under the statute is those who are in a "dating relationship," under Section 71.0021 of the Texas Family Code. FAM. § 71.0021. "Dating relationship" is defined as "a relationship between individuals who have or have had a continuing relationship of a romantic or intimate nature." *Id.* Nowhere in Section 71.0021 is there a reference to the victim's gender. What is relevant is that the victim has a specific kind of relationship with the defendant, not that the victim is a woman. Had Appellant's five character witnesses testified that Appellant has a good reputation for the nonviolent treatment of *former spouses and romantic partners*, then their testimony may have been relevant. *See* TEX. R. EVID. 404(a)(2)(A). Here, however, Appellant's five character witnesses would have testified as to Appellant's good reputation for "the ethical treatment of *women*." Not women with whom Appellant has had continuing romantic relationships, but women generally. As such, the trial court did not err in excluding Appellant's five character witnesses because, through their testimony, Appellant sought to introduce inadmissible evidence of an *im*pertinent character trait. *See* TEX. R. EVID. 404(a)(1).

Appellant had the burden of demonstrating that the trial court abused its discretion when it excluded the five character witnesses from testifying; he failed to do so. Appellant's trial counsel asked Brandon Lusk, a friend of Appellant's for about fifteen years, whether Appellant's reputation for "the ethical treatment of women" and "treating women fine" was good, and Lusk responded that it is. The State objected that such a character trait was not relevant to the charged offense, and

13

the trial court sustained the objection. The trial court then permitted Appellant's trial counsel to make a "bill" in order to preserve a record of how Appellant's other character witnesses would have testified.

In Appellant's offer of proof, the only information proffered to the trial court was that the four remaining character witnesses would testify regarding his "ethical treatment of women." Appellant's trial counsel stated that the "sole purpose of [her] tender of their testimony [wa]s to testify that they are familiar with [Appellant's] reputation as to the ethical treatment of women." Appellant's trial counsel then proceeded outside the presence of the jury to ask each witness their name, whether they were familiar with Appellant's reputation for the ethical treatment of women, and, if so, whether it was good or bad. The responses provided by the witnesses were that Appellant's reputation was "excellent," "great," "good," and "very good."

The nature and length of the witnesses' relationship with Appellant was not given;[7] what the witnesses meant by their use of the term "ethical treatment" was not given; the context in which the witnesses knew of Appellant's reputation for treatment of women was not explored; and whether or not that included violence or family members was never stated.

There are many dictionary definitions for and common usages of the word "ethical,"[8] and some of the given synonyms include "all right, decent, good, honest, honorable, just, moral, nice, right, right-minded, righteous, straight, true, upright, virtuous . . . noble, principled, respectable . . . stand-up . . . upstanding . . .

---

[7]We note one exception: Brandon Lusk, whose testimony was objected to by the State and excluded as irrelevant by the trial court before Appellant's trial counsel began making an offer of proof.

[8]"[C]onforming to a high standard of morality or virtue," or "following the accepted rules of moral conduct," or "guided by or in accordance with one's sense of right and wrong." *Ethical*, MERRIAM-WEBSTER.COM, https://www.merriam-webster.com/thesaurus/ethical (last visited April 5, 2022).

conscientious, conscionable . . . [and] scrupulous."[9]  Many of these synonyms for the word ethical do not necessarily connote a character trait of nonviolence.  The sense in which the witnesses were using the phrase "ethical treatment" was unknown, and how the average juror might interpret the testimony in terms of application to the issue of violence toward family or romantic partners and, therefore, how such testimony would have been relevant to the charged offense of "continuous violence against the family" cannot be determined based on Appellant's offer of proof.[10]  Further, we can determine no abuse of discretion by the trial court's ruling excluding the testimony, without more.  Accordingly, the issue of what relevance the testimony of these witnesses had or the harm suffered by Appellant by their exclusion is not clear.  We hold that the trial court did not abuse its discretion in excluding Appellant's character witnesses.

C. *In any event, the trial court's exclusion of Appellant's five character witnesses was harmless.*

1. *Standard of Review*

There are two possible standards of review when conducting a harmless error analysis: constitutional errors and nonconstitutional errors.  *See* TEX. R. APP. P. 44.2(a), (b).  "Exclusions of evidence are unconstitutional only if they significantly undermine fundamental elements of the accused's defense."  *Potier v. State*, 68 S.W.3d 657, 666 (Tex. Crim. App. 2002).  A criminal defendant's inability to "present his case *to the extent* and *in the form* he desired is not prejudicial where . . . he was not prevented from presenting the substance of his defense to the jury."  *Id.*

---

[9]*Id.* (also citing the synonyms for "ethical" included above).

[10]Questions propounded to witnesses using static phrasing of "reputation for ethical treatment," without more, may not result in "the nature of the disputed evidence [being] apparent" for the purposes of appellate review in every case.  *Cf. Moody v. State*, No. 01-05-00395-CR, 2006 WL 3230204, at *2–3, *8 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (mem. op., not designated for publication).

(emphasis added). Thus, "[w]hile excluding testimony that would 'incrementally' further the defendant's defensive theory is not constitutional error, excluding evidence that 'goes to the heart of the defense' is." *Wilson*, 451 S.W.3d at 886 (quoting *Ray v. State*, 178 S.W.3d 833, 836 (Tex. Crim. App. 2005)).

Assuming, *arguendo*, that the trial court's exclusion of Appellant's five character witnesses was erroneous, and if that error rose to the level of a constitutional error, we must reverse unless we determine, beyond a reasonable doubt, that the error did not contribute to Appellant's conviction. TEX. R. APP. P. 44.2(a). Constitutional error does not contribute to the conviction if the verdict "would have been the same absent the error." *Clay v. State*, 240 S.W.3d 895, 904 (Tex. Crim. App. 2007). In making this determination, we must "calculate, as nearly as possible, the probable impact of the error on the jury in light of the record as a whole." *Wall v. State*, 184 S.W.3d 730, 746 (Tex. Crim. App. 2006). A trial court's clearly erroneous exclusion of relevant, reliable evidence may constitute a constitutional error when the excluded evidence "form[ed] such a vital portion of the case that exclusion effectively preclude[d] the defendant from presenting a defense." *Wiley v. State*, 74 S.W.3d 399, 405 (Tex. Crim. App. 2002) (quoting *Potier*, 68 S.W.3d at 665).

Alternatively, a nonconstitutional error must be disregarded unless it affected Appellant's substantial rights. TEX. R. APP. P. 44.2(b). "A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict." *Moore v. State*, 624 S.W.3d 676, 682 (Tex. App.—Houston [14th Dist.] 2021, pet. ref'd) (citing *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). "[A]n error has a substantial and injurious effect or influence if it substantially swayed the jury's judgment." *Thomas v. State*, 505 S.W.3d 916, 926 (Tex. Crim. App. 2016). Thus, in reviewing the significance of a

nonconstitutional error, "[w]e examine the record as a whole, and if we are fairly assured that the error did not influence the jury or had but a slight effect, we conclude that the error was harmless." *Ray*, 178 S.W.3d at 836 (citing *Morales v. State*, 32 S.W.3d 862, 867 (Tex. Crim. App. 2000)).

In our assessment of whether the jury was more than slightly influenced by the exclusion of Appellant's five character witnesses, we consider everything in the record, including all of the admitted evidence, the nature of the evidence supporting the jury's verdict, how the excluded evidence might have been considered amongst the other evidence in the case, the jury instructions, the State's and defense's theories of the case, closing arguments, and the extent to which the State took advantage of the error. *See Motilla v. State*, 78 S.W.3d 352, 355–56 (Tex. Crim. App. 2002); *Seidule v. State*, 622 S.W.3d 480, 493 (Tex. App.—Houston [14th Dist.] 2021, no pet. h.).

2. *Analysis*

Appellant argues that he suffered harm of a constitutional magnitude when the trial court excluded his character witnesses because "those witnesses represented the heart of [his] defense, or arguably his sole defense, which was to show his reputation for ethical treatment of women." The State counters that Appellant's five character witnesses were not crucial to his theory of the case: that McMahan fabricated her accusations because Appellant cheated on her. In other words, because the trial court's evidentiary ruling did not deprive Appellant of the ability to present a defense, any resulting harm is nonconstitutional in nature. The State further argues that the testimony that Appellant has a good reputation for treating women ethically would have been "counterproductive to his own narrative that his cheating motivated [McMahan] to lie about him." After all, the State argues,

Appellant made his infidelity "the centerpiece of his defense[,]" and "cheating on [his] girlfriend is not an ethical treatment of a woman." We agree with the State.

The proposed testimony of Appellant's five excluded character witnesses did not constitute the heart of his defense because the defense's theory was essentially that McMahan was dishonest and fabricated her accusations against Appellant in retaliation for his philandering with other women while they were dating. Therefore, if the five excluded witnesses had testified, their testimony would have been that although Appellant repeatedly cheated on McMahan, he treated other women ethically. Appellant was not prevented from presenting a defense to the jury when the trial court refused to allow five witnesses to testify that Appellant had a good reputation for treating women ethically. Appellant presented evidence that McMahan was dishonest and that she lied about the alleged offenses out of animosity toward Appellant for cheating on her "not just once, not just twice, [but] several times." Thus, assuming that the exclusion of these witnesses was error, it did not rise to the level of a constitutional error because it did not deprive Appellant of his ability to present his defense. *See Wilson*, 451 S.W.3d at 886.

We further conclude that the trial court's evidentiary ruling was harmless because it would not have substantially swayed the jury's judgment and, if it had any effect, it would only be slight. *See Thomas*, 505 S.W.3d at 926; *Ray*, 178 S.W.3d at 836. Appellant's defense was that he cheats on his partners and that Virginia McMahan, his former partner, was so upset with him over this character flaw that she fabricated accusations that he physically assaulted her during the course of their relationship in order to punish him for his infidelity. The testimony of five witnesses that Appellant treats other women ethically would not have materially advanced his own theory of the case for at least two reasons. First, whether Appellant generally behaves well toward women, without more, does little to make it more or less likely

that Appellant would use violence toward those with whom he is engaged in a romantic relationship. How individuals behave toward their romantic partners may vary from how they treat every other person of the same sex or gender. Second, Appellant's theory of the case and the central theme of his defense—*cheating* on Virginia McMahan—itself constitutes the unethical treatment of a woman. For these reasons, we hold that the trial court's exclusion of Appellant's five character witnesses was neither erroneous nor harmful. Accordingly, we overrule Appellant's second issue.

*This Court's Ruling*

We affirm the judgment of the trial court.


W. BRUCE WILLIAMS

JUSTICE


April 7, 2022

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.