PD-1662-14
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 12/29/2014 4:04:18 PM
Accepted 12/30/2014 10:46:11 AM
ABEL ACOSTA
CLERK

No. _____

In the
Court of Criminal Appeals
At Austin

◆

No. 01-12-01125-CR
In the
Court of Appeals
For the
First District of Texas
At Houston

◆

No. 1068173
In the 209th District Court
Of Harris County, Texas

◆

# GARY WAYNE WILSON

*Appellant*

V.

# THE STATE OF TEXAS

*Appellee*

◆

## STATE'S PETITION FOR DISCRETIONARY REVIEW

◆

FILED IN
COURT OF CRIMINAL APPEALS

December 30, 2014

ABEL ACOSTA, CLERK

DEVON ANDERSON
District Attorney
Harris County, Texas

JESSICA AKINS
Assistant District Attorney
Harris County, Texas

1201 Franklin, Suite 600
Houston, Texas 77002
Telephone: 713.755.5826
Fax: 713.755.5809
akins_jessica@dao.hctx.net

*Counsel for Appellee*

ORAL ARGUMENT REQUESTED

## IDENTIFICATION OF THE PARTIES

Pursuant to TEX. R. APP. P. 68.4(a), a complete list of the names of all interested parties is provided below.

*Victim:*

**K.M.,** a child victim under the age of 14

*Counsel for the State:*

**Devon Anderson,** District Attorney of Harris County
**Jessica Akins,** Assistant District Attorney on appeal
**Paul Fortenberry & Lisa Bailey,** Assistant District Attorneys at trial
1201 Franklin, Suite 600, Houston, Texas 77002

**Lisa McMinn**, State Prosecuting Attorney
P. O. Box 13046, Austin, Texas 78711

*Appellant or criminal defendant:*

**Gary Wayne Wilson**

*Counsel for Appellant:*

**Charles Hinton, Ken Goode** — Counsel at trial
**Charles Hinton,** Counsel on appeal
P.O. Box 53719, Houston, Texas 77052

*Trial Judge:*

**Honorable Michael T. McSpadden,** Presiding Judge

i

# TABLE OF CONTENTS

IDENTIFICATION OF THE PARTIES ...................................................................................iii

INDEX OF AUTHORITIES.............................................................................................iii

STATEMENT REGARDING ORAL ARGUMENT..........................................................1

REASONS FOR REVIEW.................................................................................................1

STATEMENT OF THE CASE ..........................................................................................2

STATEMENT OF THE PROCEDURAL HISTORY .......................................................2

STATEMENT OF FACTS ................................................................................................2

FIRST GROUND FOR REVIEW.....................................................................................4

The First Court of Appeals erred by utilizing the constitutional
harm standard when evaluating an evidentiary ruling.

SECOND GROUND FOR REVIEW .................................................................................7

The First Court of Appeals erred in finding the excluded
character evidence was appellant's only defense and so vital to his
defense that the exclusion was harmful under the constitutional
standard.

CONCLUSION ................................................................................................................10

CERTIFICATE OF SERVICE ........................................................................................11

CERTIFICATE OF COMPLIANCE ...............................................................................11

# INDEX OF AUTHORITIES

## CASES

*Potier v. State,*
68 S.W.3d 657 (Tex. Crim. App. 2002)................................................................5, 6

*Ray v. State,*
178 S.W.3d 833 (Tex. Crim. App. 2005)..............................................................5, 6

*Wheeler v. State,*
67 S.W.3d 879 (Tex. Crim. App. 2002)...................................................................4

*Wiley v. State,*
74 S.W.3d 399 (Tex. Crim. App. 2002)..............................................................5, 8, 9

*Wilson v. State,*
No. 01-12-01125-CR, 2014 WL 6601218
(Tex. App.—Houston [1st Dist.] Nov. 20, 2014, pet. filed)...........................2, 3, 4, 6

## RULES

TEX. R. APP. P. 66.3(c).....................................................................................................1

TEX. R. APP. P. 66.3(e).....................................................................................................1

TEX. R. APP. P. 68.2(a) ....................................................................................................2

TEX. R. APP. P. 68.4(a) .....................................................................................................i

TEX. R. APP. P. 68.4(d).....................................................................................................1

TO THE HONORABLE COURT OF CRIMINAL APPEALS OF TEXAS:

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to TEX. R. APP. P. 68.4(d), the State requests oral argument. Argument in this case is necessary because the court of appeals' opinion is in conflict with at least two decisions from this Court, *Ray v. State*, 178 S.W.3d 833, 835 (Tex. Crim. App. 2005) and *Potier v. State*, 68 S.W.3d 657 (Tex. Crim. App. 2002) (erroneous evidentiary rulings rarely rise to level of denying fundamental constitutional right to present meaningful defense). And the First Court utilized dicta from this Court's opinion in *Wheeler* to support its conclusion that the trial court abused its discretion in excluding character evidence. *Wheeler v. State*, 67 S.W.3d 879, 882 (Tex. Crim. App. 2002).

## REASONS FOR REVIEW

This petition for discretionary review should be granted because the court of appeals has issued an opinion in conflict with decisions from this Court. *See* TEX. R. APP. P. 66.3(c). Further, the justices on the panel of the First Court of Appeals have disagreed on a material question of law necessary to the court's decision. *See* TEX. R. APP. P. 66.3(e).

## STATEMENT OF THE CASE

Appellant was charged by indictment with the felony offense of aggravated sexual assault of a child. (CR 17). The jury found appellant guilty as charged in the indictment and sentenced him to confinement for life in the Institutional Division of the Texas Department of Criminal Justice. (CR VIII 2047, 2049).

## STATEMENT OF THE PROCEDURAL HISTORY

On November 20, 2014, a panel of the First Court of Appeals issued a published opinion reversing this conviction and remanding the case for a new trial. *See Wilson v. State*, No. 01-12-01125-CR, 2014 WL 6601218 (Tex. App.—Houston [1st Dist.] Nov. 20, 2014, pet. filed). The opinion was authored by Justice Higley, and joined by Justice Jennings. *Id.* Justice Sharp filed a dissenting opinion. *Id.* The State's petition for discretionary review is timely filed. *See* TEX. R. APP. P. 68.2(a).

## STATEMENT OF FACTS

The child victim in this case, K.M., testified that he was just six years old when appellant began to physically and sexually assault him. (RR IV 134, 154). K.M. described how appellant had the opportunity to abuse him over several years when appellant began dating K.M.'s mother and then moved in with the family. (RR IV 94-161).

K.M. testified appellant physically beat him several times, by punching him in the chest, stomach and face. (RR IV 96). He also testified appellant beat him with a belt buckle, wooden paddle and metal clothes hanger, causing him pain. (RR IV 96-99, 142-144). And on at least three occasions, appellant threatened to kill K.M.'s father if K.M. told anyone about the abuse. (RR IV 100).

K.M. explained the physical abuse turned sexual. The first time, appellant pulled K.M. close to him while wrestling and forced his penis inside K.M.'s anus, causing K.M. to cry out from the physical pain. (RR IV 105-113). On another occasion, appellant surprised K.M. in the shower. (RR IV 115-124). K.M. testified appellant forced him down on his knees, grabbed his head and tilted it back, and forced his penis inside K.M.'s mouth. (RR IV 119-122). Appellant then instructed K.M. to move his head up and down until appellant ejaculated. (RR IV 122-123).

K.M. estimated that appellant sexually abused him between two to five times per month, from 2002-2004, causing him physical and emotional pain. (RR IV 105, 124-132, 136-138, 153, 156). K.M. told the jury appellant eventually became more violent and progressed to using duct tape to bind K.M.'s hands and ankles so he could anally rape and physically assault K.M. (RR IV 148-153).

K.M.'s sister, who lived in the home with appellant and K.M., testified at trial she witnessed appellant both physically and sexually assault K.M. *See Wilson*, 2014 WL 6601218 at *1. Dr. Donaruma examined K.M. after he disclosed sexual

abuse and discovered a healing tear around K.M.'s anal opening, which was consistent with sexual assault of the anus. *Id.*

## FIRST GROUND FOR REVIEW

**The First Court of Appeals erred by utilizing the constitutional harm standard when evaluating an evidentiary ruling.**

In his sole issue on appeal, appellant complained the trial court abused its discretion by excluding evidence of his good character for moral and safe conduct around young children. *See Wilson*, 2014 WL 6601218 at *2. At trial, appellant offered evidence from nine people who testified they each had a good opinion concerning appellant's character in regard to the moral and safe conduct around children. (RR V 61-70). Because appellant did not provide any authority for the admission of the evidence, the trial court excluded it. (RR V 59-60).

In its opinion, the Court of Appeals noted that appellant conceded two of the witnesses could not offer relevant testimony, so the Court limited its analysis to the admissibility of character evidence from seven of the witnesses. *See Wilson*, 2014 WL 6601218 at *3-4. The First Court utilized dicta from the *Wheeler* opinion to hold the trial court abused its discretion in excluding this evidence. *See Wilson*, 2014 WL 6601218 at *4; *Wheeler v. State*, 67 S.W.3d 879, 882 (Tex. Crim. App. 2002).

4

And upon appellant's suggestion, the Court further held the exclusion of this evidence should be reviewed for constitutional harm, rather than non-constitutional harm. *Wilson*, 2014 WL 6601218 at *4-5. Under that standard, the First Court held the trial court's error was harmful and the Court remanded the case for a new trial. *Id.* at *6-7. Justice Sharp dissented, agreeing that although it was error to exclude the evidence, the proper analysis was for non-constitutional harm, and under this standard, the error was harmless. *Id.* at *7-10.

The improper exclusion of evidence may raise a constitutional violation in two circumstances: 1) when an evidentiary rule categorically and arbitrarily prohibits the defendant from offering relevant evidence that is vital to his defense; or 2) when a trial court erroneously excludes evidence that is vital to the case, and the exclusion precludes the defendant from presenting a defense. *Ray v. State*, 178 S.W.3d 833, 835 (Tex. Crim. App. 2005).

But neither of those circumstances is present. *Wiley v. State*, 74 S.W.3d 399, 405 (Tex. Crim. App. 2002) (erroneous evidentiary rulings rarely rise to level of denying fundamental constitutional right to present meaningful defense). Thus, the Court of Appeals erred in relying on the second circumstance. The dissenting opinion from Justice Sharp is consistent with authority from this Court. *See Potier v. State*, 68 S.W.3d 657 (Tex. Crim. App. 2002); *Ray*, 178 S.W.3d at 836 (exclusion of

testimony from an eyewitness to the crime was reviewed for non-constitutional error).

This Court granted review in *Potier* to clarify the use of harm standards when evidence supporting the defendant's claim of self-defense was erroneously excluded. *Potier*, 68 S.W.3d at 657. In that case, the trial court excluded testimony of rumors that the defendant and his neighbor had heard from other individuals in the neighborhood that the victim intended to kill him on the day of the shooting. *Potier*, 68 S.W.3d at 658. This Court held the exclusion of some self-defense evidence did not prevent the defendant from presenting a defense in his murder trial, and thus, did not amount to constitutional error. *Id.* at 657. This Court further reasoned, under the non-constitutional harm standard, that the trial court's error in excluding the evidence was harmless because the defendant was able to convey his theory of the case through other evidence. *Id.* at 666. This Court noted, "Exclusions of evidence are unconstitutional only if they "significantly undermine fundamental elements of the accused's defense." *Id.*

The record in this case clearly demonstrates appellant was not relying on his good character to defend himself against the sexual assault allegations. Appellant's defense at trial was that K.M. was a manipulative child with severe mental problems who fabricated the allegations. *Wilson*, 2014 WL 6601218 at * 7-8 (Sharp, J., dissenting). Appellant's trial counsel thoroughly explored K.M.'s

behavioral and psychiatric issues during the cross-examination of the State witnesses. *Wilson*, 2014 WL 6601218 at * 7-8 (Sharp, J., dissenting). Because the excluded character evidence was not the linchpin of appellant's defense, the Court of Appeals erred by reviewing the case for constitutional harm. *See Potier*, 68 S.W.3d at 666; *Ray*, 178 S.W.3d at 836.

<u>SECOND GROUND FOR REVIEW</u>

**The First Court of Appeals erred in finding the excluded character evidence was appellant's only defense and so vital to his defense that the exclusion was harmful under the constitutional standard.**

Even assuming the constitutional standard is appropriate, the Court of Appeals erred in their harm analysis.

At trial, appellant's defense was that K.M. fabricated the offense. Appellant focused on the inconsistencies in K.M.'s testimony and his mental instability, basically characterizing him as a manipulative liar. In fact, appellant's own trial counsel did not seem overly concerned with presenting the character evidence and never gave the impression it was vital to his client's defense.

After the State rested its case-in-chief, appellant's trial counsel asked to make a proffer of testimony. (RR V 59). Defense counsel stated that he had nine witnesses who could testify regarding their opinion of appellant's character as to

7

his moral and safe conduct around children. (RR V 59). The trial judge then inquired about the law pertinent to appellant's theory of admissibility:

THE COURT: Is there a case specifically on moral and safe conduct around children?

MR. HINTON: Judge, I don't have a case here. And I'm not taken by surprise by this because several days earlier both you and the prosecutor put me on notice that he would object to it and that you were most likely going to overrule it. So, I'm not put on surprise. I just wanted to make the proffer of proof and the Court rule on it and then — I'm sorry — and then the Court rule on it.

THE COURT: Okay. The proffer will not be allowed. (sic) (RR V 60).

Appellant's trial counsel openly admitted the trial judge had previously requested legal authority from him on this issue and after several days, he failed to provide it. (RR V 60). In the offer of proof, appellant called nine witnesses, all of which possessed the same good opinion concerning appellant's character with regard to his moral and safe conduct around children. (RR V 61-70).

At most, the additional character evidence simply furthered appellant's theory, that he was not the type of person who would commit this crime. The Court of Appeals' decision to hold the exclusion of this evidence harmful is inconsistent with authority from this Court. *See Wiley*, 74 S.W.3d at 405.

In *Wiley*, this Court reviewed an arson conviction where the trial court excluded evidence that indicated an alternate perpetrator may have committed the offense. *Id.* at 408. The defendant claimed two pieces of evidence should have been

8

admitted with regard to the fire at his restaurant: 1) his statement to an insurance investigator that on the day of the fire he saw an unruly customer, whom he had kicked out of the restaurant the previous night, nearby watching the fire burn, and; 2) a statement from a witness who saw that customer acting crazy and destroying property at the restaurant the night before the fire. *Id.* at 403.

This Court noted the defendant was able to present other evidence to further his defense that he was not the fire starter, specifically evidence that he had received an arson threat from a disgruntled employee. *Id.* at 402. Thus, this Court opined that while the trial judge's ruling did effectively preclude appellant from presenting *some* of his evidence that another person committed the offense, it did not violate his constitutional right to present a defense. *Wiley*, 74 S.W.3d at 408 (emphasis in original).

Similarly, appellant's character references in this case simply furthered his defensive theory that he was not the type of person to commit this offense. It was only *some* evidence. And none of it was direct evidence regarding the charged offense. The Court of Appeals erred in determining the exclusion of this evidence was harmful. *Wiley*, 74 S.W.3d at 408.

Review of the Court of Appeal's opinion in this case is necessary, as *Gary Wilson v. State* is a published opinion that is in conflict with several decisions from this Court.

## CONCLUSION

It is respectfully requested that this petition be granted, the Court of Appeals' judgment on this issue be reversed, and the conviction be affirmed.

DEVON ANDERSON
District Attorney
Harris County, Texas

/s/ *Jessica Akins*

JESSICA AKINS
Assistant District Attorney
Harris County, Texas
1201 Franklin, Suite 600
Houston, Texas  77002
akins_jessica@dao.hctx.net
713.755.5826
TBC No. 24029415

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing instrument has been sent to the following addresses:

Charles Hinton
Attorney at Law
P.O. Box 53719
Houston, Texas 77052
chashinton@sbcglobal.net

Lisa C. McMinn
State Prosecuting Attorney
P. O. Box 13046
Austin, Texas 78711
Lisa.McMinn@SPA.texas.gov

/s/ *Jessica Akins*

JESSICA AKINS
Assistant District Attorney
Harris County, Texas
1201 Franklin, Suite 600
Houston, Texas  77002
akins_jessica@dao.hctx.net
713.755.5826
TBC No. 24029415

## CERTIFICATE OF COMPLIANCE

This is to certify that this computer-generated document has a word count of <u>2633</u> words, based upon the representation provided by the word processing program that was used to create the document.

/s/ *Jessica Akins*

Date: 12/29/2014

# APPENDIX A

2014 WL 6601218
Only the Westlaw citation is currently available.

NOTICE: THIS OPINION HAS NOT BEEN
RELEASED FOR PUBLICATION IN THE
PERMANENT LAW REPORTS. UNTIL RELEASED,
IT IS SUBJECT TO REVISION OR WITHDRAWAL.
Court of Appeals of Texas,
Houston (1st Dist.).

Gary Wayne WILSON, Appellant
v.
The STATE of Texas, Appellee.
No. 01–12–01125–CR. | Nov. 20, 2014.

**Synopsis**
**Background:** Defendant was convicted in the 209th District Court, Harris County, of aggravated sexual assault of a child. Defendant appealed.

**Holdings:** The Court of Appeals, Higley, J., held that:

[1] district court abused its discretion in excluding evidence of seven witnesses who were prepared to testify that defendant had a good character regarding moral and safe conduct around children;

[2] erroneous exclusion of testimony was constitutional error; and

[3] error was not harmless.

Reversed and remanded.

Sharp, J., dissented and filed opinion.

West Headnotes (18)

[1]     **Criminal Law**


Defendant preserved for appellate review whether trial court abused its discretion in excluding evidence of his good character for moral and safe conduct around young children in trial for aggravated sexual assault of a child, where defendant informed court he would present testimony of his family and friends concerning such character, court sustained State's objection to evidence, and defendant made an offer of proof informing court of substance of excluded evidence. Rules App.Proc., Rule 33.1(a)(1)(A); Rules of Evid.,

Rule 103.

Cases that cite this headnote

[2]     **Criminal Law**


Court of Appeals reviews a trial court's decision to admit or exclude evidence under an abuse of discretion standard.

Cases that cite this headnote

[3]     **Criminal Law**


Court of Appeals will not reverse a trial court's ruling admitting or excluding evidence unless that ruling falls outside the zone of reasonable disagreement.

Cases that cite this headnote

[4]     **Criminal Law**


An accused in a criminal case is permitted to introduce evidence of a specific good-character trait to show that it is improbable that he committed the charged offense, when that character trait is relevant to the offense. Rules of Evid., Rule 404(a)(1)(A).

Cases that cite this headnote

[5]     **Criminal Law**


Trial court abused its discretion in excluding evidence of seven witnesses who were prepared to testify that defendant had a good character regarding moral and safe conduct around children in trial for aggravated sexual assault of a child; witnesses knew defendant during time period in question and would testify that they had seen defendant around young children on many occasions, and testimony was directly relevant to offense with which defendant was charged. Rules of Evid., Rule 404(a)(1)(A).

Cases that cite this headnote

13

**[6]** **Rape**



A defendant charged with aggravated sexual assault is entitled to proffer evidence of his good character or propensity for moral and safe relations with small children or young boys. Rules of Evid., Rule 404(a)(1)(A).

Cases that cite this headnote

**[7]** **Criminal Law**



Excluding evidence of a defendant's good character or propensity for moral and safe relations with small children or young boys in trial for aggravated sexual assault is an abuse of discretion. Rules of Evid., Rule 404(a)(1)(A).

Cases that cite this headnote

**[8]** **Criminal Law**



Generally, the erroneous admission or exclusion of evidence is nonconstitutional error that must be disregarded unless the error affects defendant's substantial rights. Rules App.Proc., Rule 44.2(b).

Cases that cite this headnote

**[9]** **Criminal Law**



Erroneous exclusion of evidence can rise to the level of constitutional error, requiring appellate court to reverse a conviction unless the court determines beyond a reasonable doubt that the error did not contribute to conviction, when the excluded evidence forms such a vital portion of the case that exclusion effectively precludes the defendant from presenting a defense. Rules App.Proc., Rule 44.2(a).

Cases that cite this headnote

**[10]** **Criminal Law**



Erroneous exclusion of evidence can rise to the level of constitutional error, requiring appellate court to reverse a conviction unless the court determines beyond a reasonable doubt that the error did not contribute to conviction, when a state evidentiary rule categorically and arbitrarily prohibits the defendant from offering relevant evidence that is vital to his defense. Rules App.Proc., Rule 44.2(a).

Cases that cite this headnote

**[11]** **Criminal Law**



While erroneously excluding testimony that would incrementally further the defendant's defensive theory is not constitutional error requiring appellate court to reverse a conviction unless the court determines beyond a reasonable doubt that the error did not contribute to conviction, excluding evidence that goes to the heart of the defense is. Rules App.Proc., Rule 44.2(a).

Cases that cite this headnote

**[12]** **Criminal Law**



Erroneous exclusion of testimony from defendant's family and friends concerning his good character regarding moral and safe conduct around children was constitutional error, and thus appellate court was required to reverse conviction for aggravated sexual assault of a child unless court determined beyond a reasonable doubt that the error did not contribute to conviction; the only witness for defendant during guilt-innocence phase of trial was his biological daughter who testified that she and defendant's biological son lived with defendant off-and-on during time in question, no identifiable defensive theory was developed during cross-examination of State's witnesses, defendant's closing argument consisted solely of urging jury to consider that State had not carried its evidentiary burden, and defendant's credibility and character were pivotal matters. Rules App.Proc., Rule 44.2(a); Rules of Evid., Rule 404(a)(1)(A).

Cases that cite this headnote

14

**[13]**    **Criminal Law**


The mere fact that there is other evidence that could support a conviction does not establish that a constitutional error is harmless; instead, if there is a reasonable likelihood that the error materially affected the jury's deliberations, then the error is not harmless beyond a reasonable doubt. Rules App.Proc., Rule 44.2(a).

Cases that cite this headnote

**[14]**    **Criminal Law**


When determining whether a constitutional error is harmless, the reviewing court should calculate, as nearly as possible, the probable impact of the error on the jury in light of the other evidence. Rules App.Proc., Rule 44.2(a).

Cases that cite this headnote

**[15]**    **Criminal Law**


A court of appeals reviewing a cold record is ill suited to make determinations of credibility much less to weigh them.

Cases that cite this headnote

**[16]**    **Criminal Law**


The jury is in the best position to judge the credibility of a witness because it is present to hear the testimony, as opposed to an appellate court who relies on the cold record.

Cases that cite this headnote

**[17]**    **Criminal Law**


Court of Appeals must afford almost complete deference to a jury's determination of credibility, and the jury is the sole judge of what weight to give such testimony.

Cases that cite this headnote

**[18]**    **Criminal Law**


Constitutional error in excluding testimony from defendant's family and friends concerning his good character regarding moral and safe conduct around children was not harmless in trial for aggravated sexual assault of a child, even though victim testified about assaults and victim's sister testified that she saw defendant rape victim on one occasion; victim had a history of lying and being manipulative and was diagnosed with mental disorders and suffered hallucinations, sister could have had motivations to testify other than to give an unaltered account of what she observed, doctor who performed victim's physical examination following his outcry testified there were multiple possible explanations of what caused healing tear around his anal opening, and another doctor testified there may have been more than one thing that could have caused victim's psychological characteristics that were prevalent in victims of sexual abuse. Rules App.Proc., Rule 44.2(a); Rules of Evid., Rule 404(a)(1)(A).

Cases that cite this headnote

On Appeal from the 209th District Court, Harris County, Texas, Trial Court Case No. 1068173.

**Attorneys and Law Firms**
Charles Hinton, Houston, TX, for appellant.

Devon Anderson, District Attorney—Harris County, Texas, Jessica Akins, Assistant District Attorney, Houston, TX, for Appellee.

Panel consists of Justices JENNINGS, HIGLEY, and SHARP.

**OPINION**

LAURA CARTER HIGLEY, Justice.
**\*1** Appellant, Gary Wayne Wilson, was charged by indictment with aggravated sexual assault of a child.[1] The jury found him guilty and assessed punishment at life imprisonment. In one issue on appeal, Appellant argues that the trial court abused its discretion by excluding evidence of his good character for moral and safe conduct

around young children.

We reverse and remand for a new trial.

## Background

KM's parents separated around early 2001, when KM was almost four years old. After the separation, KM, his older brother, his older sister, and his younger brother lived with their mother. Some time after the separation, KM's mother started dating Appellant. Appellant moved in with KM and his family in 2002. KM made the outcry of sexual abuse six months later.

KM's father testified at trial that, early in his youth, KM had been a happy child. He testified that this behavior started to change around the time that Appellant moved in with KM's family. Over time, KM has been diagnosed with multiple psychological disorders, including attention deficit hyperactivity disorder, bipolar disorder, and post-traumatic stress disorder. KM has been prescribed medication for his disorders and has been admitted into psychological treatment centers numerous times in his childhood. A doctor from one of these facilities testified that KM suffered hallucinations, including voices telling him to hurt his mother. By the age of 15—his age at the time of trial—KM had been charged with multiple crimes, including assault of his sister and making a terroristic threat. KM's father acknowledged that KM had a history of being manipulative and telling lies.

KM testified at length and in detail about the sexual assaults to which he described Appellant subjecting him. He testified that Appellant sexually assaulted him two to five times every month from the time Appellant moved in with the family until October 2005, when KM was removed from the home. He described six of those instances in detail. In addition, KM testified about physical abuse he suffered from Appellant. KM and his sister both testified that Appellant would regularly walk around the house naked, would have sex with KM's mother in front of the children, and would leave pornographic magazines lying around the house. KM testified that Appellant threatened to kill KM and his father if KM ever told anyone about the abuse.

KM's sister testified that she once saw Appellant sexually assaulting KM by penetrating KM's anus with Appellant's penis. She testified that Appellant threatened to kill her and her father if she told anyone about what she saw. She also witnessed Appellant physically assault KM on multiple occasions.

After he made his outcry about sexual assault, KM was given a physical examination. Dr. M. Donaruma testified for the State about the results of the examination. She testified that KM's physical examination was "an abnormal anal exam" with the discovery of "a healing tear around his anal opening" that "would be consistent with a sexual assault of the anus." She also testified that there were multiple possible explanations of what caused the tear and that it is commonly "unlikely" to see an injury as the result of a sexual assault of the anus because the anus can typically accommodate objects the size of a penis.

*2 Dr. L. Thompson, the director of therapy and psychological services at the Harris County Children's Assessment Center, testified as the State's expert about certain psychological characteristics that were prevalent in victims of sexual abuse. These characteristics included sleep difficulties, appetite difficulties, anxiety disorders, and interpersonal difficulties. The record established that KM suffered from a number of the characteristics described by Dr. Thompson. Nevertheless, Dr. Thompson was careful to explain that "although there might be a higher incidence of [a] certain problem in people who have been [sexually] abused, there may be more than one thing that could cause that particular problem."

For his case-in-chief, Appellant sought to present nine witnesses to testify about Appellant's character regarding moral and safe conduct around children. These witnesses were two of Appellant's daughters, his son, his brother, a friend, a nephew-in-law, his current girlfriend, his girlfriend's mother, and a niece. The State objected that the testimony was improper bolstering and was not relevant. The trial court sustained the objections and denied the request to allow the people to testify.

Appellant presented the testimony of the nine witnesses in an offer of proof. All nine people testified that they had seen Appellant around young children on many occasions, that they had "an opinion regarding [Appellant's] character regarding moral and safe conduct around children," and that their opinion of Appellant's character was "good."

## Exclusion of Evidence

In his sole issue, Appellant argues that the trial court abused its discretion by excluding evidence of his good character for moral and safe conduct around young children.

### A. Preservation

[1] As an initial matter, the State argues that Appellant failed to preserve this issue for appellate review. As the State correctly points out, the Texas Rules of Appellate Procedure require,

> (a) In General. As a prerequisite to presenting a complaint for appellate review, the record must show that:

16

(1) the complaint was made to the trial court by a timely request, objection, or motion that:

(A) stated the grounds for the ruling that the complaining party sought from the trial court *with sufficient specificity to make the trial court aware of the complaint,* unless the specific grounds were apparent from the context....

TEX.R.APP. P. 33.1(a)(1)(A) (emphasis added). The State argues that, because Appellant failed to present the trial court with relevant case law supporting his position that the testimony he sought to have admitted was admissible after the trial court asked him if he had such case law, Appellant failed to preserve the issue for appellate review.

The State misconceives what constitutes "the complaint" as provided in rule 33.1. A stated intent to present evidence is not a "complaint." Appellant informed the trial court he would present the testimony of people concerning his "character regarding moral and safe conduct around children." It was the State that objected to this evidence, arguing that it constituted improper bolstering and was not relevant. These objections are "the complaint[s] made to the trial court by a timely request, objection, or motion." *Id.* The trial court sustained those objections, and the Appellant now "present[s] those complaint[s] for appellate review." *Id.*

**\*3** The State's reliance on rule 103 of the Texas Rules of Evidence is similarly misplaced. Rule 103 provides,

(a) Effect of Erroneous Ruling. Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and

(1) Objection. *In case the ruling is one admitting evidence,* a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context....

(2) Offer of proof. In case the ruling is one excluding evidence, the substance of the evidence was made known to the court by offer, or was apparent from the context within which questions were asked.

TEX.R. EVID. 103 (emphasis added).

The State argues that Appellant failed to satisfy the requirements of rule 103(a)(1). By its plain language, however, it is apparent that rule 103(a)(1) only applies to evidence that was *admitted.* TEX.R. EVID. 103(a)(1). Appellant's evidence was excluded. Accordingly, rule 103(a)(1) does not apply. Instead, for excluded evidence, rule 103(a)(2) applies, requiring Appellant to make an offer of proof, informing the court of the substance of the excluded evidence. TEX.R. EVID. 103(a)(2). Appellant

made just such an offer of proof.

We hold the issue has been preserved for review.

**B. Error**

[2] [3] Next, we consider whether the trial court abused its discretion by excluding the requested evidence. We review a trial court's decision to admit or exclude evidence under an abuse of discretion standard. *Shuffield v. State,* 189 S.W.3d 782, 793 (Tex.Crim.App.2006). We will not reverse a trial court's ruling unless that ruling falls outside the zone of reasonable disagreement. *Torres v. State,* 71 S.W.3d 758, 760 (Tex.Crim.App.2002).

[4] Generally, "[e]vidence of a person's character or character trait is not admissible for the purpose of proving action in conformity therewith on a particular occasion." TEX.R. EVID. 404(a). "However, an accused in a criminal case is permitted to introduce evidence of a specific good-character trait to show that it is improbable that he committed the charged offense, when that character trait is relevant to the offense." *Melgar v. State,* 236 S.W.3d 302, 306–07 (Tex.App.-Houston [1st Dist.] 2007, pet. ref'd) (citing TEX.R. EVID. 404(a)(1)(A)).

[5] Appellant asked the trial court to allow nine people to testify about Appellant's character. During the offer of proof, all nine people testified that they had seen Appellant around young children on many occasions, that they had "an opinion regarding [Appellant's] character regarding moral and safe conduct around children," and that their opinion of Appellant's character was "good." The State objected that the testimony was improper bolstering. The trial court denied the request to allow the people to testify as identified. On appeal, Appellant acknowledges that two of the people presented to testify did not know Appellant during the time period in question and, accordingly, their opinion about Appellant's character regarding conduct around children would not be relevant. Appellant argues, however, that the remaining seven people should have been allowed to testify.

**\*4** [6] [7] A defendant charged with aggravated sexual assault is "entitled to proffer evidence of his good character (or propensity) for moral and safe relations with small children or young [boys]." *Wheeler v. State,* 67 S.W.3d 879, 882 (Tex.Crim.App.2002) (citing Tex.R. Evid. 404(a)(1)(A)). Excluding such evidence is an abuse of discretion. *See Thomas v. State,* 669 S.W.2d 420, 423–44 (Tex.App.-Houston [1st Dist.] 1984, pet. refd) (reversing judgment based on exclusion of good-character evidence).

Appellant was charged with aggravated sexual assault of KM. The seven witnesses in question were prepared to testify that Appellant had a good character regarding moral and safe conduct around children. This is

17

permissible under rule 404 and directly relevant to offense with which he had been charged.

We hold the trial court abused its discretion by excluding this evidence.

## C. Type of Error
Having determined that the trial court's ruling was error, we must consider whether the error was harmful. *See* TEX.R.APP. P. 44.2. Different types of error, however, have different standards of review for harm. *See id.* So we must determine what kind of error was committed.

In general, errors in criminal cases are divided between constitutional errors and non-constitutional errors. *See id.* For constitutional errors, "the court of appeals must reverse a judgment of conviction or punishment unless the court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment." TEX.R.APP. P. 44.2(a). For non-constitutional errors, any error "must be disregarded" unless the error affects Appellant's substantial rights. TEX.R.APP. P. 44.2(b).

[8] [9] [10] [11] "Generally, the erroneous admission or exclusion of evidence is nonconstitutional error...." *Melgar,* 236 S.W.3d at 308. Erroneous exclusion of evidence can rise to the level of constitutional error, however, when the excluded evidence "forms such a vital portion of the case that exclusion effectively precludes the defendant from presenting a defense." *Potier v. State,* 68 S.W.3d 657, 665 (Tex.Crim.App.2002).[2] "Trials involving sexual assault may raise particularly evidentiary and constitutional concerns because the credibility of both the complainant and defendant is a central, often dispositive issue." *Hammer v. State,* 296 S.W.3d 555, 561 (Tex.Crim.App.2009). While excluding testimony that would "incrementally" further the defendant's defensive theory is not constitutional error, excluding evidence that "goes to the heart of the defense" is. *See Ray v. State,* 178 S.W.3d 833, 836 (Tex.Crim.App.2005) (holding erroneously excluding testimony that incrementally furthers defense is non-constitutional error); *Wiley v. State,* 74 S.W.3d 399, 405 (Tex.Crim.App.2002) (holding erroneously excluding testimony that "goes to the heart of the defense" is constitutional error).

[12] Appellant argues that the testimony of his family and friends concerning his character was his only defense and that, accordingly, its exclusion amounts to constitutional error. We must agree.

**\*5** Appellant presented one witness during the guilt-innocence phase of the trial. He presented his biological daughter, who testified that she and Appellant's biological son lived with Appellant off-and-on during the time in question. No further testimony was presented. While Appellant cross-examined many of the State's witnesses,

no identifiable defensive theory was developed in the course of the cross-examination. Appellant's closing argument consisted solely of urging the jury to consider that the State had not carried its evidentiary burden. Appellant's counsel even implored the jury to consider the difficulty of how Appellant could "defend [himself] against that kind of allegation."

A review of the record indicates, then, that Appellant's sole available defense was the testimony of his friends and family that such actions are not in keeping with his character. That testimony did not only go to the heart of his defense, *see Wiley,* 74 S.W.3d at 405; it was the sum total of his defense. Additionally, Appellant's credibility and character are pivotal matters in this case. *See Hammer,* 296 S.W.3d at 561. Accordingly, we hold that the exclusion of the evidence was constitutional error.

## D. Harm
[13] [14] When an error is determined to be constitutional error, "the court of appeals must reverse a judgment of conviction or punishment unless the court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment." TEX.R.APP. P. 44.2(a). The mere fact that there is other evidence that could support conviction does not establish that the error is harmless. *McCarthy v. State,* 65 S.W.3d 47, 55 (Tex.Crim.App.2001). Instead, "[i]f there is a reasonable likelihood that the error materially affected the jury's deliberations, then the error is not harmless beyond a reasonable doubt. The reviewing court should calculate, as nearly as possible, the probable impact of the error on the jury in light of the other evidence." *Id.*

[15] [16] [17] As we have noted, trials concerning allegations of sexual assault depend heavily on credibility determinations between two competing claims of what happened. *See Hammer,* 296 S.W.3d 561–62. This case is no different. It is well acknowledged, however, that a court of appeals reviewing a cold record is ill suited to make determinations of credibility much less to weigh them. *See Lancon v. State,* 253 S.W.3d 699, 705 (Tex.Crim.App.2008). "The jury is in the best position to judge the credibility of a witness because it is present to hear the testimony, as opposed to an appellate court who relies on the cold record." *Id.* As a result, we must "afford almost complete deference to a jury's" determination of credibility, and "the jury is the sole judge of what weight to give such testimony." *Id.*

[18] KM testified at length and in detail about the sexual assaults to which he described Appellant subjecting him. The record also established, however, that KM had a history of lying and of being manipulative. He has been diagnosed with attention deficit hyperactivity disorder, bipolar disorder, and post-traumatic stress disorder. The record established that he suffered hallucinations,

18

including voices telling him to hurt his mother.

**\*6** KM's sister testified that she saw Appellant rape KM on one occasion. But we cannot exclude the possibility that she could have motivations to testify other than to give an unaltered account of what she observed, a matter that could be informed by determinations of credibility.

Other than the testimony of KM and his sister, there is little evidence in the record identifying Appellant as the perpetrator of the sexual assaults with which he was charged. There was testimony from other witnesses concerning KM's outcry, but the veracity of those outcry statements ultimately return to determinations of KM's credibility.

Dr. Donaruma testified that KM's physical examination following his outcry was "an abnormal anal exam" with the discovery of "a healing tear around his anal opening" that "would be consistent with a sexual assault of the anus." But she also testified that there were multiple possible explanations of what caused the tear and that it is commonly "unlikely" to see an injury as the result of a sexual assault of the anus because the anus can typically accommodate objects the size of a penis. Even if we determined that a jury would conclude that the evidence was indicative of a sexual assault, however, this evidence would not compel the conclusion that Appellant committed the assault.

Similarly, Dr. Thompson testified about certain psychological characteristics that were prevalent in victims of sexual abuse. These characteristics included sleep difficulties, appetite difficulties, anxiety disorders, and interpersonal difficulties. The record established that KM suffered from a number of the characteristics described by Dr. Thompson. Nevertheless, Dr. Thompson was careful to explain that "although there might be a higher incidence of [a] certain problem in people who have been [sexually] abused, there may be more than one thing that could cause that particular problem."

We endeavor to emphasize that we do not assert that KM's testimony—or the testimony of any witness presented by the State—was motivated by anything other than a sincere desire to describe the events as they actually happened. Nothing in this opinion is meant to impugn the motives or intentions of KM. The physical and emotional difficulties he has suffered are apparent from the record, and we do not make light of them or castigate him because of them.

Instead, our concern lies with our very inability to make such determinations concerning any of the testifying witnesses in the presence of a cold record. Credibility determinations are wisely entrusted to the trier of fact for this very reason. None of the evidence directly identifying Appellant as the perpetrator of sexual assault was free from the need of credibility determinations.

Just as we cannot assess matters concerning the credibility of the State's witnesses presented at trial, we likewise cannot assess how the jury would have assessed the credibility of the seven witnesses offered by the defense to testify on Appellant's good character regarding moral and safe conduct around children. A jury swayed by the credibility of these seven witnesses and with questions on the credibility of the State's witnesses certainly could be materially affected in their deliberations. *See McCarthy, 65 S.W.3d at 55* (holding error is not harmless beyond a reasonable doubt if there is reasonable likelihood that error materially affected jury's deliberations). Because we cannot make this determination, we are required to reverse and remand for a new trial.

**\*7** We sustain Appellant's sole issue.

### Conclusion
We reverse and remand for a new trial.

Justice SHARP, dissenting from the judgment.

### DISSENTING OPINION

JIM SHARP, Justice.
**\*7** Gary Wayne Wilson was convicted of aggravated sexual assault of a child, and the jury assessed his punishment at life imprisonment.[1] Wilson's position before this Court is that the trial court erred by excluding the testimony of his friends and family regarding his character for moral and safe conduct around young children and that the error deprived him of his only meaningful defense. I concur that the trial court's exclusion was error and that Wilson preserved this argument for our review, however, I do not believe the error is constitutional error such that Wilson was deprived of a fair trial, and respectfully dissent.

### Non–Constitutional Error
It is well-established that the erroneous admission or exclusion of evidence is generally considered non-constitutional error. *Melgar v. State, 236 S.W.3d 302, 308* (Tex.App.-Houston [1st Dist.] 2007, pet. Ref'd). The erroneous exclusion of evidence, however, can rise to the level of constitutional error under very limited circumstances, including when the excluded evidence "forms such a vital portion of the case that exclusion

effectively precludes the defendant from presenting a defense." *Potier v. State,* 68 S.W.3d 657, 665 (Tex.Crim.App.2002). Cases involving such constitutional errors are rare exceptions to the rule. *See id. at 663* ("Erroneous evidentiary rulings rarely rise to the level of denying the fundamental constitutional rights to present a meaningful defense.")

The excluded evidence in this case consists of opinion testimony from seven of Wilson's family members and a close friend (Wilson's two daughters, a son, a niece, a nephew, his brother, and his brother's girlfriend) who would have testified that they had a "good" opinion concerning Wilson's character in regard to his moral and safe conduct around children. The majority states that:

> A review of the record indicates, then, that [Wilson]'s sole available defense was the testimony of his friends and family that such actions are not in keeping with his character. That testimony did not only go to the heart of his defense. *See Wiley,* 74 S.W.3d at 405. It was the sum total of his defense. Additionally, [Wilson]'s credibility and character are pivotal matters in this case. *See Hammer,* 296 S.W.3d at 561. Accordingly, we hold that the exclusion of the evidence was constitutional error.[2]

I strongly disagree that Wilson's *sole* available defense at trial was that the acts alleged were "not in keeping with his character." Wilson's defense, as illustrated by the record, was that K.M. was a manipulative child with severe psychiatric issues who was fabricating these allegations of abuse. When the complainant testifies that the defendant sexually assaulted him, as in this case, the defensive theory that "sexually assaulting young boys is not in keeping with my character" is a natural corollary to the theory that "the duplicitous and mentally disturbed boy is fabricating these claims of abuse"—the latter theory is the one Wilson advanced at trial. One theory is intrinsically linked with the other.

**\*8** The boy's lengthy history of behavioral, legal, and psychiatric problems were extensively explored during Wilson's cross-examination of his father and K.M.'s doctors.[3] Indeed, Wilson's jury argument highlighted the unreliability of K.M.'s testimony, and maintained, as such, that the State had failed to carry its evidentiary burden. Thus, it is evident from the record that the proffered testimony from Wilson's family and close-family friends regarding his character for moral and safe conduct around young children did not constitute the "sum total of his defense." It is further evident that this evidence would, at most, have only "incrementally" advanced Wilson's defensive theory of fabrication by indirectly attacking K.M.'s credibility. *See Ray v. State,*

178 S.W.3d 833, 836 (Tex.Crim.App.2005) (holding erroneously excluding testimony that incrementally furthers defense is non-constitutional error). Moreover, the fact that Wilson was unable to present positive character testimony does not necessarily mean that the error was of a constitutional magnitude, especially in such a case as this with physical and corroborating evidence. *See, e.g., Hammer v. State,* 296 S.W.3d 555, 561–62 (Tex.Crim.App.2009) (stating that credibility of complainant and defendant "is a central, often dispositive, issue" in sexual assault trials because "[s]exual assault cases are frequently 'he said, she said' trials in which the jury must reach a unanimous verdict based solely upon two diametrically different versions of an event, *unaided by any physical, scientific, or other corroborative evidence.*") (emphasis added).

As such, I would hold that the exclusion of the proffered testimony, while erroneous, is non-constitutional error and, therefore, subject to Rule 44.2(b) analysis.

### Harm Analysis: Non–Constitutional Error

Non-constitutional error must be disregarded unless the error affects the defendant's substantial rights. *See* TEX.R.APP. P. 44.2(b). A substantial right is affected when an error has a substantial and injurious effect or influence in determining a jury's verdict. *King v. State,* 953 S.W.2d 266, 271 (Tex.Crim.App.1997); *see also Solomon v. State,* 49 S.W.3d 356, 365 (Tex.Crim.App.2001) (stating that such error is harmless if, after reviewing entire record, reviewing court has "fair assurance that the error did not influence the jury, or had but a slight effect"). Accordingly, a criminal conviction should not be overturned based upon non-constitutional error absent "grave doubt" by the reviewing court that the result of the trial was free from the substantial effect or influence of that error. *See Burnett v. State,* 88 S.W.3d 633, 637–38 (Tex.Crim.App.2002). "Grave doubt" means that "in the judge's mind, the matter is so evenly balanced that he feels himself in virtual equipoise as to the harmlessness of the error." *Id.*

Our assessment of harm resulting from a non-constitutional error examines the entire record and we "calculate, as much as possible, the probable impact of the error upon the rest of the evidence." *Coble v. State,* 330 S.W.3d 253, 280 (Tex.Crim.App.2010). To be considered, among other relevant factors, is the testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, the character of the alleged error and how it might be considered in connection with other evidence in case. *Barshaw v. State,* 342 S.W.3d 91, 94 (Tex.Crim.App.2011).

**\*9** Despite the majority's protestations to the contrary, the

direct and circumstantial evidence supporting the jury's verdict in this case is extremely strong, if not overwhelmingly so. *See Motilla v. State,* 78 S.W.3d 352, 357 (Tex.Crim.App.2002) (stating overwhelming evidence of guilt is one factor for court to consider when assessing harm resulting from non-constitutional error). K.M. testified with specific and graphic detail about four different violent sexual assaults by Wilson, as well as various other instances of physical abuse. According to K.M., Wilson became more violent with him as time went on and even began using duct tape to physically restrain the young boy while the abuse was occurring.[4]

Perhaps more importantly, K.M.'s testimony is corroborated by his sister, who testified that she observed Wilson physically and sexually abuse K.M. on several occasions. Like K.M., she was able to describe the sexual assault she witnessed with specific detail for the jury. In particular, K.M.'s sister testified that one day she was walking down the hallway of their house and noticed that K.M.'s bedroom door was slightly ajar. She looked in and saw K.M. lying face-down on the floor, naked, flailing his arms, with Wilson on his knees behind K.M., hunched over the boy's body. She heard her brother yelling for Wilson to get off him, and she saw Wilson pinning K.M. down by holding his arms down, while he moved his body back and forth on top of K.M. She testified that her initial failure to disclose this sexual assault was due to Wilson's threat to kill her and her father if she did. She also corroborated K.M.'s testimony about Wilson's other sexually inappropriate behavior while living with them and their mother that an expert characterized as "grooming" (i.e., that Wilson walked around the house naked, had sex with their mother in front of them, and that Wilson kept pornographic magazines in the bathroom and on the living room coffee table).

Both K.M. and his sister's testimony was further corroborated by Dr. Donaruma, a child abuse pediatrician, who discovered an anal tear in the course of her 2006 examination of K.M. consistent with sexual abuse. Donaruma explained that such injuries are not only uncommon but consistent with repeated anal sexual assault over a number of years. On cross-examination, Dr. Donaruma testified that although there could be multiple explanations for the oval tear that she described, given the "absence of a history of constipation, encopresis, or painful defecation," K.M.'s injury was "*highly suspicious for the occurrence of penetrating anal trauma.*" (emphasis added).

K.M.'s father and his elementary school counselor[5] also testified that K.M. began to act out at school and demonstrate significant behavioral problems beginning in kindergarten/first grade—when Wilson began living with the family. This evidence corroborates K.M.'s testimony that he started acting out at school when he was in kindergarten and first grade as a result of the sexual and physical abuse he was experiencing at home by Wilson. Specifically, K.M.'s guidance counselor testified that towards the end kindergarten and beginning of his first grade year, K.M., who had previously never exhibited behavioral problems in the classroom, began to get very angry, very easily and was prone to emotional, violent outbursts (e.g., kicking and screaming or pushing chairs). These behavioral problems escalated to the point where he would run out of the classroom and onto the playground and, if already on the playground, runaway from school altogether. In October 2005, after she saw bruises on K.M.'s back and legs and scratches on his neck and ear lobes, the counselor contacted CPS. K.M., in second grade at the time, testified that he had confided Wilson's physical abuse to the counselor.[6]

**\*10** The psychiatric testimony as to the improvement of K.M.'s attitude and behavior once he moved out of the home he shared with his mother and Wilson also supports this claim; as do K.M.'s PTSD diagnosis, history of suicidal ideations at the tender age of seven or eight,[7] the testimony of his father and two other treating therapists/psychologists[8] about his behavioral and interpersonal problems, and the testimony of Dr. Thompson that PTSD can be a sign of sexual abuse and that sexually abused children exhibit characteristics such as depression, suicidality, and interpersonal difficulties and often have problems dealing with authority figures. The evidence corroborating K.M.'s and his sister's testimony regarding the sexual abuse is abundant.

Absolutely crucial to note is that Wilson's character is not critical to the disposition of the present case because this is no simple "he said, she said" casehere, there is evidence of an anal injury consistent with sexual abuse ("highly suspicious for the occurrence of penetrating anal trauma,") and other corroborating testimony from K.M.'s father, sister, elementary school counselor, therapists, and doctors. *Cf. Hammer,* 296 S.W.3d at 561–62 (stating that credibility of complainant is important in sexual assault trials because "[s]exual assault cases are frequently 'he said, she said' trials in which the jury must reach a unanimous verdict based solely upon two diametrically different versions of an event, *unaided by any physical, scientific, or other corroborative evidence.*") (emphasis added). Sexual assault cases rarely have such compelling corroborating evidence.

After reviewing the entire record in this case, including the ample evidence supporting the jury's verdict, I have "fair assurance" that the exclusion of Wilson's good character evidence "did not influence the jury, or had but a slight effect." After applying the proper non-constitutional harm analysis, I would hold that the erroneous exclusion of the testimony from seven of Wilson's close family and friends was non-constitutional error and does not require reversal. Accordingly, I would affirm the trial court's judgment.

21

Footnotes

[1]    *See* TEX. PENAL CODE ANN. §§ 21.02(b), (h), 22.021(a)(1)(B) (Vernon Supp.2014).

[2]    It can also rise to the level of constitutional error "when a state evidentiary rule categorically and arbitrarily prohibits the defendant from offering relevant evidence that is vital to his defense." *Ray v. State,* 178 S.W.3d 833, 835 (Tex.Crim.App.2005). This circumstance is not applicable to our current analysis, however.

[1]    *See* TEX. PENAL CODE ANN. §§ 21.02(b), (h), 22.021(a)(1)(B) (West Supp.2014).

[2]    I also note that the majority's application of constitutional harm analysis in this case effectively creates an impossible test under which no constitutional error could ever be considered harmless when issues of witness credibility and reliability are involved. The majority reasons that as an appellate court with nothing but a cold record, it cannot "assess how the jury would have assessed the credibility of the seven witnesses offered by the defense to testify on [Wilson]'s good character regarding moral and safe conduct around children," and therefore, it cannot "determine[ ] beyond a reasonable doubt that the error did not contribute to [Wilson's] conviction or punishment." Despite the acknowledgement that a cold record is ill suited for determinations of credibility, the majority opinion nevertheless discounts the testimony of K.M.'s sister and the State's other witnesses and even goes so far as to suggest that K.M.'s sister "could have motivations to testify other than to give an unaltered account of what she observed, a matter that could be informed by determinations of credibility."

[3]    Wilson could have cross-examined K.M. and further developed this defensive theory, but did not.

[4]    K.M. described one occasion for the jury when Wilson tied K.M.'s hands together with duct tape and bound the first or second grader to the frame of his bed so that he could not escape Wilson's violent sexual assault.

[5]    The majority omits mentions of testimony from K.M.'s elementary school counselor, which corroborates K.M.'s and his father's testimony.

[6]    Six months later, in March 2006, K.M. told his therapist that Wilson had sexually assaulted him.

[7]    K.M.'s psychiatrist testified that K.M. was hospitalized, in part, because the seven or eight-year-old boy had reported having suicidal ideations (i.e., wanting to kill himself) and hearing voices telling him to hurt his mother.

[8]    In particular, therapist Sherry Taylor who began treating K.M. in January 2006 and clinical psychologist Lisa Matthews who treated K.M. in 2012.

---

**End of Document**

© 2014 Thomson Reuters. No claim to original U.S. Government Works.