

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-20-00268-CR

Quinton Ramon **WILLIAMSON**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 175th Judicial District Court, Bexar County, Texas
Trial Court No. 2018CR0283
Honorable Maria Teresa (Tessa) Herr, Judge Presiding

Opinion by:    Rebeca C. Martinez, Chief Justice

Sitting:        Rebeca C. Martinez, Chief Justice
                Irene Rios, Justice
                Lori I. Valenzuela, Justice

Delivered and Filed: October 27, 2021

AFFIRMED

Appellant Quinton Ramon Williamson appeals his convictions of two counts of aggravated assault with a deadly weapon and one count of assault by choking or strangulation of a person with whom he has or has had a dating relationship. *See* TEX. PENAL CODE ANN. §§ 22.01, 22.02. We affirm.

## BACKGROUND

On September 21, 2017, police responded to a 911 call reporting a disturbance and a female screaming for help at an apartment. According to Jeanette Lytle, Williamson's girlfriend at the

time, the disturbance was an argument between her and Williamson which escalated when Williamson threw a gun case at her. Lytle testified that Williamson shoved her into the wall, choked her, kicked her, and punched her. She testified that she was screaming and pleading for help, doing "[a]nything to get somebody's attention." The struggle left her on her knees. According to Lytle, Williamson held a gun to her temple, repeatedly hit her with the gun, and threatened that he was going to end her life.

The altercation ended when a neighbor, Luis Duran, came to the residence after he heard cries for help. Duran explained that he found Williamson holding a pistol in one hand and a child in the other. Officer Matthew Anz arrived at the apartment soon after but did not encounter Williamson there. He observed a gun case, bullet casings on the living room floor, and a hole in the drywall. Officer Anz also observed visible injuries on Lytle and a white powdery substance on the shoulder of her shirt consistent with drywall from the hole in wall. Williamson was arrested the next day at the same apartment.

On January 10, 2018, Williamson was indicted on two counts of aggravated assault with a deadly weapon and one count of assault by choking or strangulation of a person with whom he has or has had a dating relationship. *See* TEX. PENAL CODE ANN. §§ 22.01, 22.02. On May 5, 2018, Williamson filed a motion for discovery of the arrest and conviction records of the State's witnesses and requested records regarding "[a]ny [a]rrests for assaults which could show the [c]omplaining witness Jeannette Lytle['s] propensity for violence." With new counsel, Williamson later filed a motion for the production and inspection of evidence and information, including "[c]riminal records, acts of misconduct and psychiatric history, if any, of all witnesses testifying [o]n behalf of the State during this trial." Williamson also filed a motion for discovery and inspection of evidence which requested the prior criminal record of all the State's witnesses.

The State did not file responses to any of the three motions, and the trial court did not rule on the motions.

On May 30, 2018, the State disclosed in a filing with the trial court a statement from Lytle that she lied to the police about what happened the night of the incident and that she intended to recant her statement. Five months later, the State spoke with Lytle and she stated that she wanted to cooperate in the prosecution of Williamson and was telling the truth on the night of the incident. She stated she was afraid of Williamson because he was threatening her and her mother.

The State filed a notice of intent to introduce 404(b) evidence of Williamson's extraneous offenses, noticing eighteen offenses, including various assaults, trespassing, and harassment claims against Lytle and her mother. Trial began on October 15, 2019. Williamson objected to the admission of extraneous evidence, but the trial court allowed the previously disclosed 404(b) evidence and issued a 404(b) limiting instruction in the jury charge based on Williamson's objections. At trial, Williamson's son, a neighbor, and officers at the scene testified on behalf of the State and corroborated Lytle's story. The 911 call from the night of the incident, a jailhouse phone call that Williamson made, and photographs of the scene and injuries on Lytle were admitted as State's evidence. Additionally, corroborating text messages were introduced into evidence showing Williamson's threats to Lytle and her mother the morning after the incident.

After the State rested its case, and outside of the presence of the jury, Williamson asked the State about Lytle's criminal history and, for the first time, the State disclosed a police report for a 2009 assault arrest of Lytle. Upon receiving this assault record, Williamson informed the trial court that a discovery violation occurred and that he was not able to properly prepare the case or cross-examine Lytle. The State explained that the arrest record was in their file and that they informed Williamson's counsel that he could review the file at any time, but he never did. The State further argued it had informed Williamson's counsel multiple times that there was evidence

in its file that needed to be reviewed, and that it did not upload the arrest record to the VeriPic discovery program, which Williamson's counsel could access online, because it is against federal law to upload Texas and National Crime Information Center data onto the VeriPic program.

The trial court ruled that Lytle's assault arrest was not admissible under any legal theory and that the State's actions did not constitute a discovery violation. The trial court then gave Williamson the opportunity to interview Lytle outside of the presence of the jury about the 2009 assault arrest and to recall her to the stand as a witness. However, the record shows that Williamson did not do either. Williamson moved for a mistrial based on the alleged discovery violation and exclusion of the arrest evidence, arguing he was not able to prepare a proper defense and was adversely affected by the alleged discovery violation. The trial court denied the motion for mistrial.

The jury found Williamson guilty of two counts of aggravated assault with a deadly weapon and one count of assault by choking or strangulation of a person with whom he has or has had a dating relationship. *See* TEX. PENAL CODE ANN. §§ 22.01, 22.02. Williamson was sentenced to 30 years confinement on counts one and two and 20 years confinement on count three. Williamson filed a motion for new trial, which the trial court overruled by operation of law. *See* TEX. R. APP. P. 21.8(c). Williamson timely appealed.

### EXCLUSION OF LYTLE'S 2009 ARREST RECORD

In his first issue, Williamson argues that the State's failure to disclose evidence of Lytle's 2009 arrest record until trial constituted violations of article 39.14 of the Texas Code of Criminal Procedure and of the United States Constitution under *Brady v. Maryland*, 373 U.S. 83 (1963).[1]

---

[1] Although Williamson generally argues that the State's failure to disclose evidence of Lytle's 2009 arrest record until trial violated the United States Constitution under both *Brady* and article 39.14 of the Texas Code of Criminal Procedure, he only analyzes how the withheld evidence violates article 39.14 of the Texas Code of Criminal Procedure.

The State responds that Lytle's arrest and conviction records were available for Williamson's inspection in their file and that the trial court properly excluded the evidence. The State further argues that even if the trial court erred by excluding Lytle's 2009 arrest record, such error was harmless. We assume without deciding that the State's failure to disclose Lytle's 2009 arrest record until trial constituted a discovery violation and that the trial court erred in excluding such evidence. However, we hold that any alleged error was harmless.

### A. Standard of Review

A trial court's decision to admit or exclude evidence is reviewed under an abuse of discretion standard. *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010). A trial court does not abuse its discretion unless its ruling lies outside the zone of reasonable disagreement. *Id.*. If a trial court's ruling is correct under any theory of applicable law and is reasonably supported by the record, it should be upheld. *Willover v. State*, 70 S.W.3d 841, 845 (Tex. Crim. App. 2002).

### B. Applicable Law

#### i. Article 39.14

When the Legislature passed the Michael Morton Act in 2013, it "revamped" article 39.14 of the Texas Code of Criminal Procedure to expand the availability and scope of discovery that must be produced by the State. *Watkins v. State*, 619 S.W.3d 265, 277 (Tex. Crim. App. 2021); *see id.* at 274 (observing that "under earlier versions of [article 39.14] . . . there was no general right of discovery in Texas"). Article 39.14 now creates a general, continuous duty of the State to disclose "before, during, or after trial" any discovery evidence "tend[ing] to negate the guilt of the defendant" or reduce the punishment the defendant could receive. TEX. CODE CRIM. PROC. ANN. art. 39.14(h), (k); *Ex parte Martinez*, 560 S.W.3d 681, 702 (Tex. App.—San Antonio 2018, pet.

---

Therefore, Williamson has waived his constitutional issue due to inadequate briefing, and we only determine whether the State's actions violated article 39.14. *See* TEX. R. APP. P. 38(i).

ref'd). The prosecutor's duty to disclose evidence under article 39.14 is now "much broader" than the prosecutor's duty to disclose as a matter of due process under *Brady*. *Watkins*, 619 S.W.3d at 274; *Ex parte Martinez*, 560 S.W.3d at 702.

ii.   Harm

If an alleged error is not of federal constitutional origin, it must be subjected to a harm analysis. TEX. R. APP. P. 44.2(b). "Generally, the erroneous admission or exclusion of evidence is non constitutional error . . . ." *Melgar v. State*, 236 S.W.3d 302, 308 (Tex. App.—Houston [1st Dist.] 2007 pet. ref'd); *see Solomon v. State*, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001). "Erroneous exclusion of evidence can rise to the level of constitutional error . . . when the excluded evidence 'forms such a vital portion of the case that exclusion effectively precludes the defendant from presenting a defense.'" *Wilson v. State*, 451 S.W.3d 880, 886 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd) (quoting *Potier v. State*, 68 S.W.3d 657, 665 (Tex. Crim. App. 2002)). An appellate court must disregard a non-constitutional error that does not affect a criminal defendant's substantial rights. *Coble v. State*, 330 S.W.3d 253, 280 (Tex. Crim. App. 2010). Violations of statutory duties under article 39.14 of the Texas Code of Criminal Procedure warrant a harm analysis. *See Watkins*, 619 S.W.3d at 269 (reversing because of an article 39.14 violation due to lack of disclosure and remanding to the court of appeals to analyze whether appellant was harmed by the lack of disclosure).

When conducting a harm analysis of non-constitutional error flowing from the exclusion of relevant evidence, "an appellate court need only determine whether or not the error affected a substantial right of the defendant." *Morales v. State*, 32 S.W.3d 862, 867 (Tex. Crim. App. 2000) (citation omitted). In assessing the likelihood that the jury's decision was adversely affected by the error, the appellate court should consider everything in the record, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the

verdict, the character of the alleged error and how it might be considered in connection with other evidence in the case. *Id.* The reviewing court may also consider the jury instructions, the State's theory, any defensive theories, closing arguments and even voir dire, if applicable. *Motilla v. State*, 78 S.W.3d 352, 355–56 (Tex. Crim. App. 2002). An appellate court should not overturn a conviction for error if, after examining the entire record, it has fair assurance that the error did not influence the jury, or it had only a slight effect. *Kirksey v. State*, 132 S.W.3d 49, 55 (Tex. App.—Beaumont 2004, no pet.).

### C. Analysis

Assuming without deciding that the State violated article 39.14 of the Texas Code of Criminal Procedure by failing to disclose evidence of Lytle's 2009 arrest record until trial and that the trial court erred in excluding such evidence, the record does not show the requisite harm flowing from this assumed error. *See* TEX. R. APP. P. 44.2(b); *see also Branum v. State*, 535 S.W.3d 217, 227 (Tex. App.—Fort Worth 2017, no pet.) (explaining the entirety of the record must show appellant was harmed by the error). Williamson had the burden to show that the withheld evidence was constitutional error or one that affected his substantial rights by denying him access to evidence that would have changed the outcome of the trial in his favor. *See Coble*, 330 S.W.3d at 280. Williamson has asserted, but not argued or shown, that the trial court's presumed error is constitutional; therefore, we review only whether the error affected Williamson's substantial rights.

Williamson argues that the exclusion of Lytle's 2009 arrest record adversely affected his substantial rights by limiting his ability to obtain and present mitigating evidence in order to prepare a defense for trial. However, Williamson fails to identify how his defensive theory would have changed had he discovered Lytle's 2009 arrest record sooner. *See Branum*, 535 S.W.3d at 226–27 (assuming trial court erred in violation of article 39.14(a) in failing to order the State to

produce a statement but holding error was harmless because appellant failed to show how the withheld evidence affected his substantial rights by denying him access to evidence that would have changed the outcome of the trial in his favor).

While Williamson states that disclosure of the assault arrest "could have revealed [Lytle's] propensity for violence and turned the entire defense of the case," Williamson presented other evidence showing Lytle's propensity for violence and fails to explain how the 2009 arrest record would have done anything more than benefit his theory incrementally. *Cf. Ray v. State*, 178 S.W.3d 833, 836 (Tex. Crim. App. 2005) (holding erroneously excluding testimony that incrementally furthers defense is non-constitutional error). At trial, Brittany Smith, Williamson's fiancé at the time, testified that Lytle was erratic, confrontational, and broke Williamson's hand by smashing it into the door on the night of the incident. Although Williamson's defensive theory could be supported by the admittance of Lytle's 2009 arrest record, it was not precluded by the State's failure to disclose the record. Williamson has not shown that the withheld evidence would have changed the outcome of trial. *See Potier*, 68 S.W.3d at 666.

After considering the entire record, we hold the assumed error did not influence the jury, or only had a slight effect. *See Morales*, 32 S.W.3d at 867. At trial, the jury heard testimony from Lytle, Williamson's son, neighbor and reporting officers, which all supported Williamson's convictions of aggravated assault with a deadly weapon and assault by choking or strangulation. *See* TEX. PENAL CODE ANN. §§ 22.01, 22.02. Additionally, the jury viewed photos of the scene and the injuries sustained by Lytle on the night of the incident which corroborated Lytle's story. The jury also heard the 911 phone call from the night of the incident and a recorded jailhouse phone call made by Williamson.

Therefore, Williamson failed to show that the trial court's decision to exclude Lytle's 2009 assault arrest changed such a vital portion of the case that it precluded him from presenting a

meaningful defense and affected his substantial rights. *See Canales v. State*, No. 04-19-00235-CR, 2020 WL 2132979, at *3 (Tex. App.—San Antonio 2020, pet. ref'd) (mem. op., not designated for publication) (holding trial court's decision to admit hearsay testimony was harmless error because the court had a "fair assurance that the [admission of the hearsay testimony] did not influence the jury, or had but a slight effect." (quoting *Motilla*, 78 S.W.3d at 355)). After considering the entire record, we have a fair assurance that any error relating to the exclusion of Lytle's 2009 arrest record and the State's failure to disclose such record until trial was harmless.

## INEFFECTIVE ASSISTANCE OF COUNSEL

In his second issue, Williamson argues that his trial counsel was objectively deficient and denied him his Sixth Amendment right to effective counsel. The State argues that Williamson has failed to point to evidence to support his ineffective assistance of counsel claim. We agree.

### A. Applicable Law

"To prevail on a claim of ineffective assistance of counsel, a defendant must demonstrate two things: deficient performance and prejudice." *Miller v. State*, 548 S.W.3d 497, 499 (Tex. Crim. App. 2018). A defendant must show that (1) his trial counsel's representation fell below the objective standard of reasonableness, and (2) a reasonable probability exists that but for counsel's deficiency the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see Hernandez v. State*, 726 S.W.2d 53, 56–57 (Tex. Crim. App. 1986) (applying *Strickland* to an ineffective assistance claim under the Texas Constitution). A defendant bears the burden of proving both elements by a preponderance of the evidence. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). "Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim." *Id.* A court need not address both elements of an ineffective assistance of counsel claim when the defendant makes an insufficient showing as to either element. *Strickland*, 466 U.S. at 697.

Our review of counsel's representation at trial is highly deferential. *Tong v. State*, 25 S.W.3d 707, 712 (Tex. Crim. App. 2000). We look to the totality of the representation at trial, not isolated acts or omissions of counsel in hindsight. *Wilkerson v. State*, 726 S.W.2d 542, 548 (Tex. Crim. App. 1986). Any allegations of ineffectiveness must be firmly founded in the record, and the defendant must overcome the strong presumptions that counsel rendered adequate assistance and that counsel's actions were the result of sound trial strategy. *Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994).

### B. Analysis

Here, Williamson fails to identify from the record any action or inaction by counsel to support his assertion. *See Thompson*, 9 S.W.3d at 813 ("Appellant bears the burden of proving by a preponderance of the evidence that counsel was ineffective."). Williamson restates the alleged discovery violation addressed in his first point of error but fails to indicate how his counsel's performance relating to the alleged discovery violation meets either prong of an ineffectiveness claim. *See id.* ("Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim."); *cf. Ruiz v. State*, 293 S.W.3d 685, 693 (Tex. App.—San Antonio 2009, pet. ref'd) (waiving appellant's complaint because his brief "contain[ed] no argument or authorities" to support his contention that his counsel was ineffective). Williamson thus fails to rebut the presumption that his counsel's actions conformed with sound trial strategy. *Jackson*, 877 S.W.2d at 771. Williamson's second issue is overruled.

### WILLIAMSON'S PRIOR ASSAULTS

In his final issue, Williamson contends the trial court abused its discretion by allowing evidence regarding his conduct, drug use, propensity for violence and prior acts. Williamson contends such evidence was prejudicial, unduly influenced the jury, and deprived him of a fair trial. In response, the State argues the incidents were relevant to illustrate the nature of Williamson

and Lytle's relationship under article 38.371 of the Texas Code of Criminal Procedure and were not used impermissibly under the Rules of Evidence to prove Williamson acted in conformity with his character. We hold that the extraneous-offense evidence was admissible under article 38.371 and not precluded by the Rules of Evidence.

## A. Standard of Review

A trial court's ruling on the admissibility of extraneous-offense evidence is reviewed under an abuse of discretion standard. *De La Paz v. State*, 279 S.W.3d 336, 343 (Tex. Crim. App. 2009). As long as the trial court's ruling is within the zone of reasonable disagreement, we will uphold the ruling. *Id.* at 343–44. Furthermore, we will uphold the trial court's ruling if it is correct under any theory of law applicable to the case. *Id.* at 344.

## B. Applicable Law

Rule 404(b) of the Texas Rules of Evidence precludes the admission of evidence of a crime, wrong, or act solely to prove a person's character to show that he acted in conformity with that character on a particular occasion; however, the rule permits evidence to be admitted for other purposes, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." TEX. R. EVID. 404(b). Extraneous-offense evidence may be admissible when it has relevance apart from character conformity. *See id.* R. 404(b)(2); *Devoe v. State*, 354 S.W.3d 457, 469 (Tex. Crim. App. 2011).

Article 38.371 provides:

(b) In the prosecution of an offense described by Subsection (a), subject to the Texas Rules of Evidence or other applicable law, each party may offer testimony or other evidence of all relevant facts and circumstances that would assist the trier of fact in determining whether the actor committed the offense described by Subsection (a), including testimony or evidence regarding the nature of the relationship between the actor and the alleged victim.

(c) This article does not permit the presentation of character evidence that would otherwise be inadmissible under the Texas Rules of Evidence or other applicable law.

TEX. CODE CRIM. PROC. ANN. art. 38.371(a)–(c).

Relevant and admissible extraneous-offense evidence may include evidence that: (1) explains why a victim of domestic violence is unwilling to cooperate with prosecution; (2) confirms the victim's initial—and later recanted—statements to police; or (3) contextualizes the nature of the relationship between victim and assailant. *See Gonzalez v. State*, 541 S.W.3d 306, 312 (Tex. App.—Houston [14th Dist.] 2017, no pet.); *Fernandez v. State*, 597 S.W.3d 546, 566 (Tex. App.—El Paso 2020, pet. ref'd).

## C. Analysis

The State filed a pre-trial notice to introduce 404(b) extraneous-offense evidence, and at trial, Williamson objected to the questions about his extraneous offenses and his and Lytle's progression of domestic violence. The trial court admitted the extraneous-offense evidence, citing article 38.371. On appeal, Williamson complains of the admission of evidence relating to his and Lytle's history of drug use and evidence of his prior assaults on Lytle.

Even assuming all of the extraneous acts at issue constituted "wrongs" or "other acts," which could implicate Rule 404(b), each act served a permissible purpose to define Williamson's violent relationship with Lytle and was not precluded by the Rules of Evidence. *See* TEX. CODE CRIM. PROC. ANN. art. 38.371(b) (stating that the nature of a relationship itself is a permissible, non-character-conformity purpose for which evidence is admissible); *Fernandez*, 597 S.W.3d at 557 (determining victim's testimony "made the extraneous-offense evidence relevant to explain why she was unwilling to cooperate with the prosecution at trial, to confirm her initial story to police, and to contextualize the nature of her relationship with [defendant]"); *see also* TEX. R. EVID. 404(b)(2) (providing a non-exhaustive list of permissible purposes for which evidence of a

crime, wrong, or other act may be admissible despite the prohibition against use of character-conformity evidence).  Therefore, Williamson's extraneous acts had relevance apart from character conformity, namely, to show the "nature of the relationship" between Williamson and Lytle.  *See* TEX. CODE CRIM. PROC. ANN. art. 38.371(b).  The evidence also was necessary to explain Lytle's decision to recant her testimony and her refusal to cooperate with the State.  *See Camacho v. State*, No. 01-20-00282-CR, 2021 WL 2832970, at *6 (Tex. App.—Houston [1st Dist.] July 8, 2021) (mem. op., not designated for publication) ("The extraneous-offense evidence . . . was relevant to assist the jury in understanding why . . . a victim of repeated domestic abuse, changed her story about what had occurred with respect to the charged offense.").  The trial court therefore did not abuse its discretion in admitting the extraneous-offense evidence in this case.  *See* TEX. R. EVID. 404(b)(2); *Devoe*, 354 S.W.3d at 469.  Issue three is overruled.

## CONCLUSION

The judgment of the trial court is affirmed.

Rebeca C. Martinez, Chief Justice

DO NOT PUBLISH